UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
DOLORES SHARPE,

           *Plaintiff,*

        -against-

COUNTY OF NASSAU, NASSAU COUNTY
POLICE DEPARTMENT, CHARLES VOLPE,
in his individual and official capacities, VICTOR
GLADITZ, in his individual, and official capacities
and Former Police Commissioner THOMAS DALE,
in his individual and official capacities,

           *Defendants.*
-------------------------------------------------------------X

**DOCKET NO.: CV-15-6446**

**<u>COMPLAINT</u>**

***Jury trial demanded***

Plaintiff DOLORES SHARPE, by and through her attorneys, the LAW OFFICES OF FREDERICK K. BREWINGTON, as and for Complaint against the Defendants, states and alleges as follows:

## <u>PRELIMINARY STATEMENT</u>

1.      This is civil action seeking monetary relief (including past and ongoing economic loss), compensatory, special damages and punitive damages, disbursements, costs and fees for violations of the Plaintiff's rights, brought pursuant to 42 U.S.C. §§ 1981, 1983, 1985, 1986 and 1988.

2.      Specifically, the Plaintiff alleges that the collective Defendants, either directly acted and/or allowed its agent, employee, representative and or police officers - VOLPE and GLADITZ- to act maliciously and unconstitutionally, misrepresenting facts concerning Plaintiff SHARPE, which caused Plaintiff SHARPE to suffer violations of her various statutory rights, violations of her Constitutional rights, false arrest, malicious criminal prosecution, abuse of process, loss or

(temporary/partial) loss of reputation, loss of benefits, loss of pay, prolonged alteration of employment, (or temporary/partial) employment opportunities, diminished capacity, exposure to criminal and administrative proceedings, manufacturing evidence, incurring   special damages, monetary and compensatory damages.

3.     Collective Defendants then negligently, wantonly, recklessly, intentionally and knowingly sought to and did wrongfully deprive Plaintiff of terms, conditions and privileges of her employment, through unlawful misrepresentation, misinformation, character assassination and wrongful discipline.

4.     Said acts were done expressly, implicitly, knowingly with the consent and condonation of the COUNTY OF NASSAU,  NASSAU COUNTY POLICE DEPARTMENT, CHARLES VOLPE, and VICTOR GLADITZ, to the detriment of PLAINTIFF SHARPE. Upon discovering violations being committed upon Plaintiff by its officer, employee, Defendants VOLPE and GLADITZ, Defendant former Commissioner DALE, COUNTY OF NASSAU and Defendant NASSAU COUNTY POLICE DEPARTMENT failed to intervene, correct, discipline, supervise, train/re-train and/or even counsel Defendants VOLPE and GLADITZ, and instead ratified Defendants VOLPE and GLADITZ's conduct – as further described below.

## JURISDICTION AND VENUE

5.     The jurisdiction of this Court is invoked under 28 U.S.C. §§ 1331 and 1343.

6.     Venue herein is proper under 28 U.S.C. § 1391 (b); the cause of action arose in the Eastern District of New York, and all of the Parties are employed and/or are located in Nassau County, New York State.

7.     At all times relevant to this action Plaintiff was a member of the union (in good

2

standing) and is a direct beneficiary of the collective bargaining agreement formed between the Union and the COUNTY OF NASSAU'S Police Department.

8.      Plaintiff has informed the Union and the County of Nassau of her concerns and about her mistreatment with nothing being done to remedy or address the abuse to which she has been subjected.

## PARTIES

9.      Plaintiff, Police Officer DOLORES SHARPE (hereinafter "SHARPE" or "PLAINTIFF"), at all times relevant to this Complaint, was an employee of the COUNTY OF NASSAU within the NASSAU COUNTY POLICE DEPARTMENT. Plaintiff resides in the County of Queens, State of New York.

10.      During all times relevant in this Complaint the Defendant, COUNTY OF NASSAU, hereinafter COUNTY is a municipality of the State of New York organized and operating under and by virtue of the laws of the State of New York. Upon information and belief, the COUNTY oversees, maintains, manages/supervises, and controls several departments and employees- including but not limited to the NASSAU COUNTY POLICE DEPARTMENT and the individual Defendants Charles VOLPE, Victor GLADITZ and COMMISSIONER Thomas DALE, herein.

11.      During all times relevant in this Complaint the Defendant, NASSAU COUNTY POLICE DEPARTMENT (hereinafter DEPARTMENT) is a department and or agency of NASSAU operating as part of the COUNTY. Upon information and belief, the DEPARTMENT oversees, maintains, manages/supervises, and controls several units, bureaus and employees- including but not limited to the Fifth Precinct and the individual Defendants Charles VOLPE, Victor GLADITZ , and COMMISSIONER THOMAS DALE herein.

3

12.     During all times mentioned in this Complaint, Defendant Charles VOLPE (hereinafter VOLPE or Defendant VOLPE) is an employee of the Defendant COUNTY OF NASSAU and is a police officer (Shield No. 2702), with the rank of Police Officer, within the DEPARTMENT. Upon information and belief, at all times relevant to, Defendant VOLPE was assigned to the Fifth Precinct, he is being sued in his individual and official capacities.

13.     During all times mentioned in this Complaint, Defendant Victor GLADITZ (hereinafter GLADITZ or Defendant GLADITZ) is an employee of the Defendant COUNTY and is a police officer, within the DEPARTMENT. Upon information and belief, at all times relevant Defendant GLADITZ was assigned to the Fifth Precinct, and is being sued in his individual and official capacities.

14.     During all times mentioned in this Complaint, Defendant COMMISSIONER DALE (hereinafter DALE or Defendant DALE) was an employee of the Defendant COUNTY and was the highest ranking member within the DEPARTMENT and was a decision maker with authority to make and set policy and bind the COUNTY and DEPARTMENT. Defendant DALE is being sued in his individual and official capacities.

## **FACTUAL ALLEGATIONS**

15.     Plaintiff DOLORES SHARPE is a twenty (20) year veteran of the Nassau County Police Department with ten (10) years of patrol experience.

16.     Prior to becoming a Nassau County Police Officer, DOLORES SHARPE, served in the United States Air Force as a military police officer.

17.     DOLORES SHARPE, has exemplified extraordinary service and has received awards including but not limited to, an award from the Grand Council of The Guardians.

4

18.     Plaintiff has served COUNTY and DEPARTMENT on several levels and has also been assigned to special units such as but not limited to the Applicant Investigators Unit, Recruitment, and Community Affairs.

19.     At approximately 5:35 p.m. on November 29, 2013 SHARPE, entered a parking lot on Mayfair Avenue, in West Hempstead, N.Y. which was close to the store Dollar Tree which fronts on Hempstead Turnpike.

20.     Upon entering the parking lot, SHARPE located a parking spot in front and to the left of a vehicle that was in a row of parked cars.

21.     Defendant VOLPE, while in Nassau County Police Car 504 entered the parking lot and approached SHARPE's car facing the opposite direction. Plaintiff waited while VOLPE stopped in the parking lot roadway.

22.     After a short time, VOLPE drove alongside SHARPE's vehicle, rolled down his window and motioned for SHARPE to do the same.

23.     Plaintiff complied by rolling down her window. At that point VOLPE told her that she was obstructing his view from an investigation.

24.     Plaintiff informed VOLPE that she was waiting for him to clear the parking spot she wished to enter, which he had just been blocking.

25.     After the brief verbal exchange, VOLPE drove away and SHARPE parked in the available parking spot, exited her vehicle and walked towards the door of Dollar Tree.

26.     VOLPE then drove around the row of parked cars, shouting "Hey yo, you" at Plaintiff and pulling up in front of the Dollar Tree entrance, intercepting SHARPE.

27.     In response SHARPE then walked to the window of VOLPE's car to speak with him.

5

28. VOLPE then said; in an abrasive manner, "the next time you see a police car you need to pull over to the side."

29. Surprised by this statement, SHARPE then identified herself as a member of service, displaying her badge and identification to VOLPE through his driver side window and offered her assistance as a member of service.

30. VOLPE looked at SHARPE's identification and repulsively responded "I don't give a fuck who you are, and I don't give a fuck what you do."

31. SHARPE, shocked by this unwarranted abuse, responded "if that's the way you treat a fellow member of service, then fuck you too" and then proceeded to enter into Dollar Tree to shop.

32. As SHARPE walked away from the vehicle VOLPE exclaimed "that's why you get no respect you fucking moron." Plaintiff did not respond and continued into the store.

33. Upon SHARPE entering the store, VOLPE then drove out of the parking lot to meet Police Officer GLADITZ. The two spoke and conspired with specific intent to come back to the Dollar Tree to further stalk and harass Ms. SHARPE.

34. After shopping for a short period of time, SHARPE exited the store and then proceeded to walk to her vehicle.

35. Upon backing out of her parking space, SHARPE saw a police patrol car enter the parking lot with its overhead lights on moving at a rapid pace. SHARPE then stopped her car to ensure she did not block the patrol car.

36. Once the police vehicle passed Plaintiff's car, she proceeded to drive to the exit on Mayfair Avenue.

6

37.     SHARPE again saw the police car which was moving at a fast pace and flashing its lights approaching in her direction.

38.     SHARPE again took actions to remove herself from the path of the car, by pulling her car over to the side on Mayfair Avenue.

39.     The operator of the police car chirped the overhead siren twice ordering Sharpe to stop her vehicle. SHARPE immediately stopped her car in response to the officers' actions.

40.     Upon being pulled over, SHARPE exited her vehicle and approached the officers to inquire as to why she was being pulled over.

41.     At this time, VOLPE exited his vehicle and approached SHARPE in an aggressive and confrontational manner.

42.     SHARPE asked VOLPE, "what's the problem? Why are you pulling me over?"

43.     SHARPE then stated "I just showed you that I am a member of service."

44.     SHARPE at this time felt threatened as a result of being harassed and stalked by VOLPE.

45.     Then, Defendant GLADITZ pulled up to the scene, on the opposite side of the street.

46.     GLADITZ exited his vehicle and approached Ms. SHARPE.

47.     Without warning, GLADITZ grabbed both of SHARPE's upper arms above her elbows and forcefully pushed her backwards to her car which was parked approximately five to six feet away.

48.     GLADITZ forcefully slammed SHARPE against her car and pinned her on her vehicle, hindering her ability to move.

7

49.     SHARPE offered no resistence to this force and gave the officers no reason to utilized this unreasonable force.

50.     SHARPE immediately identified herself as an officer to GLADITZ.

51.     GLADITZ responded "I don't know who the fuck you are!"

52.     VOLPE asked "where is your ID?"

53.     SHARPE gestured to her right outside coat pocket.

54.     GLADITZ sparingly loosened his grip on SHARPE's arms to allow her to reach into her pocket and grab her credentials.

55.     At all times since GLADITZ had arrived, he was physically restraining SHARPE without any resistence from her.

56.     Plaintiff produced her identification by displaying it in front of herself holding the identification in her hand.

57.     VOLPE reached over the left shoulder of GLADITZ and yanked the identification shield/card holder from Ms. SHARPE's hand.

58.     VOLPE snatched SHARPE's identification with such force that it caused the metal chain it was held on to break.

59.     The metal chain remained in SHARPE's hand.

60.     While standing in the cold of a November night, waiting for her identification to be returned, SHARPE placed her hands in her coat pockets, while still being constrained by Police Officer GLADITZ.

61.     VOLPE then yelled "what else does she have?"

8

62.     Officer GLADITZ, then forcefully grabbed SHARPE's arm to remove her hand from her pockets.

63.     At this point, SHARPE requested to see a Supervisor.

64.     While still holding SHARPE's arms Officer GLADITZ said "you fucking swung a chain at my face you bitch!"

65.     SHARPE responded "No, I didn't swing a chain . . ."

66.     GLADITZ proceeded to verbally and sarcastically prod SHARPE saying "I cannot believe you did that."

67.     At all times, Defendants both knew that SHARPE did not swing her chain at Defendants.

68.     SHARPE never swung or attempted to swing a chain at GLADITZ or VOLPE.

69.     At this point GLADITZ proceeded to (physically) spin SHARPE around and forcibly place handcuffs on her wrists.

70.     SHARPE, although disrespected and concerned, gave no resistence to her arrest, but rather again requested a Supervisor be called.

71.     In an attempt to rationalize and reason with GLADITZ and VOLPE, SHARPE asked VOLPE "how much time [he had] on the job."

72.     VOLPE responded "more time than you sweetheart." To which SHARPE responded "don't call me sweetheart."

73.     VOLPE responded "don't call me by my last name" despite the fact that it was displayed on his name plate.

9

74.     VOLPE then began to insult SHARPE referring to SHARPE as a "sorry excuse for a – police officer."

75.     SHARPE continued to ask for a supervisor.

76.     VOLPE/GLADITZ refused to summon a Supervisor. Instead, VOLPE continued to talk to and about SHARPE unnecessarily and in a rude fashion.

77.     VOLPE then asked SHARPE "do you have your gun on you?"

78.     SHARPE responded "Yes, it is on my right hip."

79.     VOLPE then walked over to SHARPE who was in handcuffs and physically went under SHARPE's outer coat and removed her firearm from its secure holster. While doing so VOLPE said "Now I feel safe." This comment was made condescendingly and served to further insult Plaintiff, who was being unlawfully arrested, unnecessarily handled with unwarranted force and paraded as a thug before passers by on the street without reason.

80.     During this ordeal, GLADITZ told SHARPE "I guess you don't need a job." This remark threatened Plaintiffs employment, and showed that GLADITZ intended to take steps to cause SHARPE harm through the loss of her job or injury to her status.

81.     SHARPE remained standing on the side of the road in the cold of a November night showcased to all of the passers by and the public, standing as a criminal in handcuffs and held by defendants for no lawful reason.

82.     After being on display, publicly humiliated and exposed to the elements for approximately twenty minutes, a Supervisor finally arrived.

83.     Sergeant BOYCE, Sergeant CARROLL, and Police Officer CARBONE, responded to the scene. Upon entering the scene and seeing Ms. SHARPE against her car with her coat hanging

10

off of her in the cold of November, Sergeant BOYCE decided that SHARPE was of no threat, removed her handcuffs and placed her in the front of a squad car, to transport her to the fourth precinct.          .

84.     Upon entering the Fourth Precinct, SHARPE was taken to the Detective Squad kitchen where she was guarded by Sergeant CARROLL.

85.     Shortly thereafter SHARPE was transferred to the Crime Analyst Office, where she was guarded by Sergeant BOYCE.

86.     At approximately 8:00 p.m. Police Benevolent Association (P.B.A.) Representative Police Officer Houghton arrived, and spoke to SHARPE.

87.     At approximately 10:00 p.m. SHARPE was notified by Detective Sergeant DISTLER that she was suspended for thirty (30) days without pay as issued by former Police Commissioner THOMAS DALE.

88.     At approximately 10:25 p.m., SHARPE was presented with a suspension notice to sign and then she was informed that she was being suspended for Resisting Arrest.

89.     On November 30, 2013 at approximately 1:10 a.m., SHARPE was fingerprinted and photographed by Police Officer Mallay in the arrest room in the Fourth Precinct in the presence of Police Officers Rivera and Houghton, Sergeant BOYCE and Lieutenant Douglas.

90.     At approximately 1:15 a.m., SHARPE was driven by Police Officer Houghton in a private car to Mayfair Avenue to retrieve her vehicle.

91.     At approximately 1:30 a.m., SHARPE retrieved her car and was advised that the Internal Affairs Unit would follow her home.

11

92.     At approximately 2:00 a.m., SHARPE arrived at her home and was relieved of her off duty service pistol by Detective Sergeants Distler and Danzi.

93.     Defendant VOLPE knew that his reasons for pursuing Plaintiff SHARPE were not based on any probable cause or any lawful reason, and that the actions he took throughout the entire interaction were to  humiliate and embarrass Plaintiff SHARPE.

94.     As a result of her false arrest Plaintiff has been subjected to ridicule, has had to undergo disciplinary charges, criminal process, as well as suffered temporary loss of employment (suspension for thirty (30) days with no pay).

95.     Initially Plaintiff was charged only with resisting arrest.

96.     It was not until the date of arraignment, days after her arrest, that she was charged with harassment and having unlawfully tinted windows.

97.     To support Defendant VOLPE's unreasonable claim of harassment in the second degree, he fabricated a story in which he accused Plaintiff SHARPE of attempting to strike Defendant GLADITZ in the face with a chain, and he used it as an excuse to explain throwing SHARPE on the car and cuffing her. Defendants knew his allegation was false but said this to make sure that Plaintiff would be subject to ridicule, undergo disciplinary charges, criminal process, as well as suffer losses of her employment status.

98.     VOLPE never witnessed Plaintiff attempt to strike GLADITZ yet he swore that he did. At all times VOLPE and GLADITZ knew that their stories were false.

99.     To support Defendant GLADITZ's unreasonable claim of harassment in the second degree he fabricated a story in which he accused Plaintiff SHARPE of attempting to strike him in the face with a chain, and he used it as an excuse to explain throwing her on the car and cuffing her.

12

Defendant knew his allegation was false but said this to make sure that Plaintiff would be subject to ridicule, undergo disciplinary charges, criminal process, as well as suffer losses of her employment status.

100.    To support DEFENDANT VOLPE's unreasonable claim of resisting arrest, Defendants said that the Plaintiff engaged in a "struggle" and caused the two to struggle to put the handcuffs on her. VOLPE knew this allegation was false but said this to make sure that Plaintiff would be subject to ridicule, undergo serious disciplinary charges, criminal process, as well as suffer losses of her employment.

101.    To support DEFENDANT GLADITZ's unreasonable claim of resisting arrest, Defendants said that the Plaintiff engaged in a "struggle" and caused the two to struggle to put the handcuffs on her. GLADITZ knew this allegation was false but said this to make sure that Plaintiff would be subject to ridicule, undergo disciplinary charges, criminal process, as well as suffer losses of her employment status.

102.    At no time did Plaintiff SHARPE strike or attempt to strike Defendant GLADITZ or any other person with a chain.

103.    At no time during the incident did Defendant VOLPE, despite the fact that he stalked the Plaintiff and waited for her to leave the store she was shopping in, and pull out of the parking lot, and then turned on his turret lights to make a traffic stop, mention or issue a ticket to Plaintiff for her tinted windows.

104.    At all times, Defendant VOLPE knew that his false allegations against Plaintiff SHARPE would cause public embarrassment and ridicule to Plaintiff and ridicule and alienation amongst her peers at the Nassau County Police Department as well as cause disciplinary action at

13

her place of employment.

105.    At all times, Defendant GLADITZ knew that his false allegations against Plaintiff

SHARPE would cause public embarrassment and ridicule to Plaintiff and ridicule and alienation

amongst her peers at the Nassau County Police Department as well as cause disciplinary action at

her place of employment.

106.    Defendant VOLPE intentionally and recklessly calculated  his false and malicious

actions against Plaintiff and unreasonably leveled false allegations against Plaintiff in an effort to

make sure Plaintiff would suffer adverse consequences.

107.    Defendant VOLPE used his status position and resources as a police officer and

stalked Plaintiff SHARPE.

108.    VOLPE intentionally waited for Plaintiff SHARPE to come out of the Dollar Tree

store.

109.    VOLPE solicited and conspired to get the help of another police officer in an attempt

to ambush and harass SHARPE.

110.    Defendants VOLPE and GLADITZ conspired to, and did, ambush Plaintiff SHARPE

by double-teaming her in an unlawful, unnecessary traffic stop and continuously questioning her

position in the Nassau County Police Department.

111.    Their actions were based on their bias against Plaintiff as a black woman.

112.    At no point in time throughout the encounter between Plaintiff and Defendants was

the Plaintiff at liberty to leave.

113.    Plaintiff requested that a supervisor be contacted and brought to the scene six or more

times.

14

114.    The Defendant's disrespected Plaintiff SHARPE despite the fact that she was a colleague and made statements such as "I guess you don't need your job," thus threatening her employment status with the DEPARTMENT.

115.    VOLPE, adding insult to the already injurious situation, demeaningly and unnecessarily referred to Plaintiff as "a sorry excuse for a cop," and upon asking if the abuse she was enduring was indicative of how Defendants GLADITZ and VOLPE treat a fellow colleague, VOLPE informed her that "we [will] treat you the way you get treated."

116.    As a direct result of the false and malicious allegations made by Defendant VOLPE, Plaintiff was unjustly suspended from her command and position for thirty (30) days.

117.    As a direct result of the false and malicious allegations made by Defendant GLADITZ, Plaintiff was unjustly suspended from her command and position for thirty (30) days without pay.

118.    The DEPARTMENT and/or Defendant COUNTY turned a blind eye to the fact that DEFENDANTS VOLPE and GLADITZ had forcibly thrown Plaintiff SHARPE on a car and handcuffed her without probable cause.

119.    The DEPARTMENT and/or Defendant COUNTY turned a blind eye to the fact that DEFENDANTS VOLPE and GLADITZ had used gender based expletives including "bitch" and "sweetheart" towards Plaintiff.

120.    The DEPARTMENT and/or Defendant COUNTY turned a blind eye to the fact that DEFENDANTS VOLPE mistreated Plaintiff based on her race and gender and told Plaintiff "this is why you get no respect."

121.     The DEPARTMENT and/or Defendant COUNTY turned a blind eye to the fact that DEFENDANTS VOLPE and GLADITZ had both taken actions unbecoming of an officer towards a fellow African American female officer Plaintiff SHARPE.

122.     On or about December 2, 2013 Plaintiff's counsel provided a letter to DALE which included language informing him that "*we write this letter in the hope that the recent events which will be referenced below can be immediately remedied and that the distasteful attempt to falsely charge and harm a member of your own Police Department will not be allowed to continue*." Rather than attempt to remedy the clear abuses and violations that were occurring  DALE endorsed, adopted, encouraged and authorized the actions being taken against Plaintiff.

123.     In that same letter DALE, the Department and the COUNTY were placed on notice that the actions of VOLPE and GLADITZ including "*[t]heir complete disdain and ongoing verbal abuse of Officer Sharpe is seen as a clear exhibition of racial bias that was evident from Officer Volpe's opening barrage of curses and insults.*" Rather than attempt to remedy the clear abuses and violations that were occurring  DALE endorsed, adopted, encouraged and authorized the actions being taken against Plaintiff and joined in a level of disrespect that would not have occurred but for Plaintiff's race, color and gender.

124.     The DEPARTMENT and/or Defendant COUNTY ignored evidence of abuse that transpired and ignored the false and perjurious testimony of VOLPE and GLADITZ.

125.     The DEPARTMENT and/or Defendant DALE turned a blind eye to the fact that DEFENDANTS VOLPE and GLADITZ had conspired to wait for and stop Plaintiff SHARPE.

16

126.    The DEPARTMENT and/or Defendant DALE turned a blind eye to the fact that DEFENDANTS VOLPE and GLADITZ had forcibly thrown Plaintiff SHARPE on a car and handcuffed her without probable cause.

127.    The DEPARTMENT and/or Defendant DALE turned a blind eye to the fact that DEFENDANTS VOLPE and GLADITZ had used gender based expletives including "bitch" and "sweetheart" towards Plaintiff.

128.    The DEPARTMENT and/or Defendant DALE turned a blind eye to the fact that DEFENDANTS GLADITZ had told Plaintiff "this is why you get no respect".

129.    The DEPARTMENT and/or Defendant DALE turned a blind eye to the fact that DEFENDANTS VOLPE and GLADITZ had both taken actions unbecoming of an officer towards a fellow female officer Plaintiff SHARPE .

130.    The DEPARTMENT and/or Defendant DALE ignored voice/video evidence of the abuse that transpired and ignored the false and perjurious testimony of VOLPE and GLADITZ.

131.    The existence of proof that Plaintiff SHARPE was in fact a police officer employed for the NASSAU P.D., made the further questioning and detention of Plaintiff SHARPE unwarranted.

132.    Although the Defendant COUNTY and DEPARTMENT had access to the video/audio recording Defendants VOLPE and GLADITZ had, it did not cease the wrongful suspension of Plaintiff SHARPE.

133.    No action(s) were taken whatsoever against Defendant VOLPE or GLADITZ for their knowingly, reckless and intentional false allegations against Plaintiff SHARPE.

17

134. Although the Defendants COUNTY and DEPARTMENT had access to the video/audio Defendant VOLPE had, it did not cease the wrongful prosecution of Plaintiff SHARPE.

135. Plaintiff SHARPE stated and maintained her innocence through both the criminal proceeding and her administrative proceeding.

136. During the criminal proceeding Defendant VOLPE, continued his false allegations against Plaintiff, and attempted to negate the fact that he purposely departed from and returned to the parking lot to pursue and ambush Plaintiff SHARPE.

137. As a result of Defendant VOLPE's false and malicious actions against Plaintiff, Plaintiff was immediately wrongfully suspended from her employment, and she suffered the scrutiny and embarrassment of not only being arrested, but having her reputation tarnished by the false allegations.

138. Plaintiff lost pay and benefits she would have received during her suspension.

139. Plaintiff was forced to endure criminal proceedings, be subjected to public humiliation, embarrassment, damage to her public standing and good name and was required to fight to prove her innocence.

140. As a result of Defendant VOLPE's false and malicious actions against Plaintiff, Plaintiff sustained considerable economic hardship and sustained monetary damages, special damages (including attorney's fee's) and suffered hostility in her employment.

141. To add further insult to Plaintiff's injuries, DEPARTMENT, the employer of Plaintiff SHARPE, turned a blind eye to the fact that this devout worker was being maliciously prosecuted on false charges, and made no attempt to cease the prosecution.

18

142.    In fact, no Defendant named herein came forth to cease or prevent the wrongfulness of the charges placed upon Plaintiff SHARPE.

143.    On March 4, 2015, the criminal charges pending in Nassau County Criminal court were dismissed after a full trial in the matter of People v. Sharpe, (Docket No.2013NA027341).

144.    During the pendency of the criminal matter, Plaintiff continued to sustain economic and compensatory damages, including but not limited to accrued attorneys fees, loss of accrued time, use time she did not intend to use, forced into retirement and loss of years of regular pay and income.

145.    Even after the dismissal of the criminal charges, and with knowledge that Defendant VOLPE gave false testimony about critical facts against the Plaintiff, Defendant COUNTY and DEPARTMENT, refused to return unjustly taken compensation to Plaintiff.

146.    Even after the dismissal of the criminal charges, and with knowledge that Defendant GLADITZ gave false testimony about critical facts against the Plaintiff, Defendant NASSAU and DEPARTMENT, refused to return unjustly taken compensation to Plaintiff.

147.    Defendant COUNTY and DEPARTMENT through its agents and employees deprived Plaintiff not only of her ability to serve the people of the County of Nassau, but of her status, good name, reputation, confidence and sense of trust and safety.

148.    Defendant COUNTY and DEPARTMENT through its agents and employees subjected Plaintiff to high levels of aggression, abusive language, and physical aggression through slamming Plaintiff on a car, cursing and abusing Plaintiff in an effort to strip Plaintiff of any respect and dignity.

149.    Upon information and belief, Defendant COUNTY and DEPARTMENT, knew and/or should have known that Defendant VOLPE made false statements of criminal wrongdoing

19

against Plaintiff, while acting in his official duties and under color of law as a police officer with the Nassau County Police Department.

150.    Upon information and belief, Defendant COUNTY and DEPARTMENT knew and/or should have known that Defendant GLADITZ made false statements of criminal wrongdoing against Plaintiff, while acting in his official duties and under color of law as a police officer with the Nassau County Police Department.

151.    As a direct result of the combined actions of Collective Defendants with regard to Plaintiff SHARPE, Plaintiff sustained and continues to sustain damages/injuries, including but not limited to loss of pay, loss of liberty, loss of dignity, stigmatization, scrutiny, lost pay and benefits, embarrassment, humiliation, labeling as a criminal Defendant, diminished quality of life, incidental fees/damages, loss of pay, special damages, economic damages and attorney's fees.

152.    Plaintiff was also charged and found to be engaging in acts unbecoming of an officer.

## AS AND FOR COUNT ONE
## 42 U.S.C. § 1981

153.    The Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 through 152 of this Complaint with the same force and effect as though fully set forth herein.

154.    Plaintiff was targeted by Defendants VOLPE and GLADITZ because of her color and race, that being an African American female.

155.    Plaintiff was detained, arrested, assaulted and maliciously prosecuted by Defendants VOLPE and GLADITZ, due to her color and race.

156.    Plaintiff was denied privileges and immunities because of her race/color.

20

157.    The above referenced conduct was part of deliberate and concerted actions aimed at Plaintiff in acts of bias, abuse, and discrimination, based on race and color, by DEPARTMENT, COUNTY, DALE and Defendants VOLPE and GLADITZ, which violates 42 U.S.C. §1981 as amended by the Civil Rights Restoration Act of 1991 (Publ. Law No. 102-406).

158.    Defendants VOLPE and GLADITZ continued the aforesaid discriminatory treatment of Plaintiff on an ongoing basis, and DEFENDANTS' above alleged conduct was part of a systemic pattern and practice of discrimination (against Plaintiff as a African American  female.) This wrongful action was adopted, supported, encouraged, and authorized by defendants DALE, COUNTY and DEPARTMENT.

159.    As a direct consequence of the actions of DALE, Officers VOLPE and GLADITZ, acting in furtherance of their duties as agents of COUNTY and DEPARTMENT, DOLORES SHARPE suffered injuries, including but not limited to, temporary loss of pay, stigmatization, embarrassment, harassment, loss of liberty and the infringement of her rights guaranteed to her under the U.S. Constitution.

160.    As a direct consequence of the of the actions of the Collective DEFENDANTS, DOLORES SHARPE suffered temporary loss of employment, loss of standing in the community, loss of time, criminal record, loss of freedom, loss of quality of life, arrest record, premature retirement and loss of regular income, damage to name and reputation, special damage, attorney's fees, incidental fees/costs, loss of property and other financial impairments.

161.    That by reason of the foregoing, Plaintiff has been damaged in the sum of three million ($3,000,000.00) dollars- not including costs of this action, attorneys fees pursuant to 42 U.S.C. § 1988 as well as punitive damages against DALE, VOLPE and GLADITZ .

21

## AS AND FOR COUNT TWO
## 42 U.S.C. § 1983
## 1st Amendment Speech and 14th Amendment Violations- Including but not limited to
## Unlawful treatment due to Race/Color and Gender

162.    The Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 through 161 of this Complaint with the same force and effect as though fully set forth herein.

163.    The Defendants Officer Charles VOLPE and Officer Victor GLADITZ, under the color of state law, subjected Plaintiff to the foregoing acts and omissions without due process of law in a violation of 42 U.S.C. § 1983 thereby depriving Plaintiff of her rights, privileges and immunities secured by the First Amendment of the United States Constitution.

164.    Defendants violated Plaintiff's freedom to engage in protected speech, and expressive conduct, which concerned matters of public concern- pertaining to the maltreatment of female minorities by the Nassau County Police Department.

165.    The abusive, malicious and unreasonable actions committed by DEPARTMENT and COUNTY were done in furtherance of their intent to deny Plaintiff's equal protection under the law - based on her race, gender and speech which was expressive and based on their treatment of African American women by the police in Nassau County - a matter of public concern in violation of her First and Fourteenth Amendment rights.

166.    The Defendants Officer VOLPE and Officer GLADITZ failure to stop these wrongful actions constitutes a breach of their duty, as public servants acting under the color of the law, to do so under the First Amendment.

22

167.    Each named Defendant knew that their respective actions were in violation of the Plaintiff's right to free speech, which they knew or should have known were unreasonable, unlawful, and a breach of the Plaintiff's rights under a well organized and clearly established law.

168.    Defendants VOLPE and GLADITZ acting within the scope of their official authority as state actors, contrary to the various Constitutional and statutory rights secured to the Plaintiff, and acting with malicious intent, misrepresented facts in order to justify the maltreatment and violation of the First Amendment right to free speech against the Plaintiff.

169.    Defendants COUNTY and DEPARTMENT position of taking no action and refusal to discipline the Defendants Officers VOLPE and GLADITZ for their misconduct against Plaintiff is neglectful of their duty to prevent the further violation of Plaintiff's rights under 42 U.S.C. § 1983, with such violation occurring as a result of said officers being improperly cleared of any wrongdoing, despite substantial evidence to the contrary.

170.    None of the Defendants took action to prevent the wrongful actions taken against the Plaintiff causing false criminal proceedings to continue against the Plaintiff, abuse of process and retaliation for trying to exercise her right to speak on a matter of public speech.

171.    Each of the Defendants condoned the wrongful, grossly negligent, reckless, callous, careless and intentional acts taken as set out herein and each had an affirmative responsibility to prevent, expose and reverse said wrongful, grossly negligent, reckless, callous, careless and intentional acts but instead furthered and condoned said wrongful acts. Said actions were aimed at silencing Plaintiff, to keep her, as an African American female silent.

172.    Plaintiff's Fourteenth Amendment Rights to due process were violated, as she as both an African American and a female, was subjected to maltreatment that her white, male counterparts would never be subjected to.

173.    Plaintiff as a woman and an African American is part of a protected class, and in committing such acts against Ms. SHARPE, VOLPE and GLADITZ both violated Plaintiff's right to substantive due process.

174.    COUNTY and DEPARTMENT through their actions, violated the due process rights guaranteed to Ms. SHARPE under the Fourteenth Amendment of the United States Constitution.

175.    Dolores SHARPE exercised her right to speak in refusing to be verbally abused in the parking lot of the Dollar Tree Store. She also continues to exercise her right to speak while being harassed, abused, and unlawfully searched, seized, arrested and confined by Officers VOLPE and GLADITZ.

176.    As a direct consequence of the actions of Officers VOLPE and GLADITZ, acting in furtherance of their duties as agents of COUNTY and DEPARTMENT, DOLORES SHARPE suffered injuries, including but not limited to, temporary loss of pay, stigmatization, embarrassment, harassment, loss of liberty and the infringement of her rights guaranteed to her under the U.S. Constitution.

177.    As a direct consequence of the of the actions of the Collective DEFENDANTS, DOLORES SHARPE suffered temporary loss of employment, loss of standing in the community, loss of time, criminal record, loss of freedom, loss of quality of life, arrest record, premature retirement and loss of regular income, damage to name and reputation, special damage, attorney's fees, incidental fees/costs, loss of property and other financial impairments.

178.    That by reason of the foregoing, Plaintiff has been damaged in the sum of three million ($3,000,000.00) dollars- not including costs of this action, attorneys fees pursuant to 42 U.S.C. § 1988 as well as punitive damages against VOLPE and GLADITZ .

## AS AND FOR COUNT THREE
## 42 U.S.C. § 1983
### Excessive Force

179.    The Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 through 178 of this Complaint with the same force and effect as though fully set forth herein.

180.    The Defendants Officer VOLPE and GLADITZ lacked reasonable cause to stalk, harass, assault, batter, seize, search manhandle, menace and/or otherwise subject DOLORES SHARPE to excessive physical contact.

181.    Officers VOLPE and GLADITZ lacked reasonable cause to arrest Plaintiff or retain her in prolonged custody.

182.    The wrongful detainment, wrongful arrest, excessive force and other wrongful acts conducted against the Plaintiff by Collective Defendants, their agents, employees and servants, were committed under the color of law, customs and statutes of the State of New York to deprive Plaintiff of her various Constitutional rights.

183.    Plaintiff was falsely seized, falsely detained and falsely arrested by GLADITZ and VOLPE and unreasonably subjected to excessive and unreasonable force and unreasonable search and seizure.

184.    Plaintiff was falsely arrested, falsely seized, detained and held for an unreasonable period of time against her will without justification, explanation or rationale of such detention.

25

185.    While being detained, Plaintiff was subjected to excessive force and to an unlawful search and unlawful imprisonment.

186.    Officers VOLPE and GLADITZ were each aware of the unlawful and unreasonable detention, stop, search and seizure of Plaintiff.

187.    Such search, seizure, arrest, detention and assault was ordered, condoned and authorized by COUNTY and DEPARTMENT, its agents, employees, and servants including but not limited to Officer VOLPE and Officer GLADITZ with unreasonable, callous, deliberate indifference to Plaintiff's innocence and physical welfare.

188.    As part of the false arrest, detention and accusation, Defendants Officer VOLPE, Officer GLADITZ caused DOLORES SHARPE to be seized, arrested and held without probable cause and caused him to her to be deprived of her liberty, without due process and was further exposed to disgrace, public humiliation and embarrassment.

189.    Defendants individually and collectively knew at the time of the Plaintiff's arrest and at all times since then that the Plaintiff was falsely accused of the criminal activity and the Plaintiff's arrest was based solely, or in part on VOLPE and GLADITZ's motive or intent to cover-up their excessive force upon DOLORES SHARPE.

190.    Each of the individual Defendants, acting under color of the law, acted unreasonably, and separately and/or in concert acted willfully, knowingly, and purposefully with the specific intent to deprive Plaintiff of her right to freedom from illegal seizure and freedom from illegal detention and imprisonment. All of these rights are secured to Plaintiff by the provisions of the due process clause of the Fifth and Fourteenth Amendment to the Constitution of the United States, the Fourth Amendment and by 42 U.S.C. §1983.

26

191.    In falsely arresting, abusing, detaining, threatening, intimidating, and interrogating Plaintiff, the Defendants each knew or should have known they were violating laws of the State of New York and those statutory and Constitutional rights set forth herein and have failed to prevent the same and therefore acted in concert to harm Plaintiff.

192.    As a direct consequence of the actions of Officers VOLPE and GLADITZ, acting in furtherance of their duties as agents of COUNTY and DEPARTMENT, DOLORES SHARPE suffered injuries, including but not limited to, temporary loss of pay, stigmatization, embarrassment, harassment, loss of liberty and the infringement of her rights guaranteed to her under the U.S. Constitution.

193.    As a direct consequence of the of the actions of the Collective DEFENDANTS, DOLORES SHARPE suffered temporary loss of employment, loss of standing in the community, loss of time, criminal record, loss of freedom, loss of quality of life, arrest record, premature retirement and loss of regular income, damage to name and reputation, special damage, attorney's fees, incidental fees/costs, loss of property and other financial impairments.

194.    That by reason of the foregoing, Plaintiff has been damaged in the sum of three million ($3,000,000.00) dollars- not including costs of this action, attorneys fees pursuant to 42 U.S.C. § 1988 as well as punitive damages against VOLPE and GLADITZ .

## AS AND FOR COUNT FOUR
## 42 U.S.C §1983 - ABUSE OF PROCESS

195.    The Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 through 194 of this Complaint with the same force and effect as though fully set forth herein.

196.    The Collective Defendants intentionally, recklessly and maliciously filed and/or caused to be filed, a false, inaccurate, and/or misleading criminal complaint against Plaintiff DOLORES SHARPE. Said criminal complaint was made by the aforementioned Defendants without research and investigation (of any kind) into the veracity and/or truthfulness of said complaint.

197.    The false criminal complaint lodged by Defendants against DOLORES SHARPE was done with knowledge that the facts contained therein were false, misleading and/or otherwise inaccurate.

198.    Defendants Officer VOLPE, and Officer GLADITZ did not file said criminal complaint as a result of actual knowledge that a crime was committed, determined through investigation and/or a simple rudimentary search, which was available to Defendants.

199.    Instead, Defendants Officer VOLPE and Officer GLADITZ filed said false criminal complaint against Plaintiff DOLORES SHARPE with an ulterior purpose/motive to subject Plaintiff as punishment without lawful court order and to collect payment and various forms of restitutions from Plaintiff to which Defendants were not entitled.

200.    Defendants subjected Plaintiff to the criminal justice system without just cause or reason. DEFENDANTS abused the criminal justice system in arresting, charging, prosecuting and conducting a public trial in attempt to satisfy their personal attempt to satisfy their personal goals of abusing an African American woman and to further their own purposes of exercising their privilege as white men over her for their own warped sense of power.

201.    COUNTY and DEPARTMENT's motive for subjecting Plaintiff DOLORES SHARPE to false criminal process included but was not limited to a cover-up of their wrong doings,

and to level their charges against Plaintiff in an effort to ensure that Plaintiff would be convicted and would not be able to pursue her rights in court for her false arrest. Defendants also intended to cripple Plaintiff financially by forcing her into submitting to restitution payments, and courts fees/fines - not because they knew or believed that Plaintiff committed any criminal acts.

202.    The Defendants' clear intentions was to use the criminal justice system to cause harm to Plaintiffs without proper motive, excuse or justification of any kind.

203.    Defendants' use of criminal process for the aforementioned improper purpose amounted to an abuse of said process, which was initiated and used to the detriment of Plaintiffs solely for a purpose that was/is outside the legitimate ends of the legal process.

204.    Defendants COUNTY, VOLPE, GLADITZ and DALE and DEPARTMENT , with knowledge of the inaccuracy and/or falsity of said criminal complaints made by Defendants VOLPE and GLADITZ , and without any investigation and/or rudimentary query, intentionally, recklessly and maliciously caused to be filed, said false, inaccurate, and/or misleading criminal complaint against Plaintiff DOLORES SHARPE.

205.    The subsequent false arrest and malicious prosecution of Plaintiff DOLORES SHARPE was done by Defendants COUNTY, DEPARTMENT, Officers VOLPE and GLADITZ with knowledge that the facts contained therein were false, misleading and/or otherwise inaccurate.

206.    Defendant Officers VOLPE and GLADITZ did not initiate the arrest and prosecution of Plaintiff as a result actual knowledge that a crime was committed.

207.    Instead, Defendant Officers searched, seized, harassed, annoyed, falsely arrested, falsely imprisoned, and maliciously prosecuted Plaintiff with an ulterior purpose/motive to collect payments, and fees. Defendants were motivated by the intent to subject Plaintiff to the criminal

29

system in order to force, coerce and justify restitutions, payments and fees from Plaintiff and to shield themselves from liability from the wrongful actions committed against Plaintiff.

208. Defendants' COUNTY, DEPARTMENT, Officer VOLPE and Officer GLADITZ, clear intention was to falsely arrest, and falsely prosecute Plaintiff DOLORES SHARPE and cause harm to Plaintiff without proper motive, excuse, or justification of any kind.

209. Defendants COUNTY, DEPARTMENT, VOLPE and GLADITZ's, use of criminal process for the aforementioned improper purpose amounted to an abuse of said process, which was initiated and used to the detriment of Plaintiff solely for a purpose that was/is outside the legitimate ends of the criminal process (i.e. to prevent criminal and professional liability to Defendants and to obtain personal monetary returns).

210. As a direct consequence of the actions of DALE and Officers VOLPE and GLADITZ, acting in furtherance of their duties as agents of COUNTY and DEPARTMENT, DOLORES SHARPE suffered injuries, including but not limited to, temporary loss of pay, stigmatization, embarrassment, harassment, loss of liberty and the infringement of her rights guaranteed to her under the U.S. Constitution.

211. As a direct consequence of the the of the actions of the Collective DEFENDANTS, DOLORES SHARPE suffered temporary loss of employment, loss of standing in the community, loss of time, criminal record, loss of freedom, loss of quality of life, arrest record, premature retirement and loss of regular income, damage to name and reputation, special damage, attorney's fees, incidental fees/costs, loss of property and other financial impairments.

30

212.    That by reason of the foregoing, Plaintiff has been damaged in the sum of three million ($3,000,000.00) dollars- not including costs of this action, attorneys fees pursuant to 42 U.S.C. § 1988 as well as punitive damages against DALE, VOLPE and GLADITZ .

## AS AND FOR COUNT FIVE
### 42 U.S.C. § 1983 FALSE ARREST AND MALICIOUS PROSECUTION

213.    The Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraph 1 through 212 of this Complaint with the same force and effect as though fully set forth herein.

214.    The Collective Defendants VOLPE and GLADITZ lacked reasonable suspicion and probable cause to stop and detain the Plaintiff DOLORES SHARPE. During said time, Plaintiff was physically prevented from leaving the custody and kept there under the supervision and the knowledge of Defendants without access to her freedom, family and home. Defendants then fabricated false statements, falsified records, mis-characterized facts, and engaged in perjury in Court in an attempt to justify their excessive force upon, and false arrest of Plaintiff DOLORES SHARPE.

215.    The subsequent malicious prosecution of Plaintiff DOLORES SHARPE, which was conducted by Collective Defendants with knowledge that Plaintiff was wrongfully stopped, falsely detained, harassed, and wrongfully arrested without any cause, was committed by Defendants under color of law, customs, and statutes of the State of New York. Defendants then fabricated false statements, falsified records, mis characterized facts, and engaged in perjury in an attempt to justify and further their malicious prosecution of Plaintiff DOLORES SHARPE.

216.    Under color of law, the Defendants deprived Plaintiff DOLORES SHARPE of her rights to protection from unlawful search and seizure by falsely charging Plaintiff criminally and

prosecuting the Plaintiff pursuant to said criminal statutes, for which there was no evidence or substantiation of any kind to the allegations.

217.    The accusations of wrongful actions leveled against Plaintiff DOLORES SHARPE were false and were an attempt to cover up the false arrest and abuse of process which has been inflicted by Defendants on Plaintiff DOLORES SHARPE.

218.    The malicious prosecution of Plaintiff DOLORES SHARPE without probable cause, and other wrongful acts conducted against the Plaintiff by Defendants constitutes a violation of Plaintiff's rights, secured by the New York State Constitution, to be free from unreasonable searches and seizures. Such actions were grossly negligent, reckless, unreasonable and unauthorized, as Defendants had a duty to not subject DOLORES SHARPE to summary punishment, but failed to do so and breached their duty.

219.    There was a determination of the criminal proceedings against Plaintiff on the merits in favor of SHARPE.

220.    The evidence throughout the processing of criminal charges did not warrant the basis to proceed with the charges against the Plaintiff and DEFENDANTS, COUNTY, DALE, GLADITZ and VOLPE, proceeded to charge SHARPE despite this fact.

221.    No reasonable officer would have acted with such ill-intention, un-professionalism, and negligence as VOLPE and GLADITZ acted against SHARPE.

222.    The Defendants acted under color of law to deny the Plaintiff DOLORES SHARPE her Constitutional rights to due process and freedom from seizure, by wrongfully detaining her, without providing any reasonable basis and/or investigation warranting prosecution, or other due process guarantees secured by the Plaintiff.

223.     As a direct consequence of the actions of DALE, Officers VOLPE and GLADITZ, acting in furtherance of their duties as agents of COUNTY and DEPARTMENT, DOLORES SHARPE suffered injuries, including but not limited to, temporary loss of pay, stigmatization, embarrassment, harassment, loss of liberty and the infringement of her rights guaranteed to her under the U.S. Constitution.

224.     As a direct consequence of the of the actions of the Collective DEFENDANTS, DOLORES SHARPE suffered temporary loss of employment, loss of standing in the community, loss of time, criminal record, loss of freedom, loss of quality of life, arrest record, premature retirement and loss of regular income, damage to name and reputation, special damage, attorney's fees, incidental fees/costs, loss of property and other financial impairments.

225.     That by reason of the foregoing, Plaintiff has been damaged in the sum of three million ($3,000,000.00) dollars- not including costs of this action, attorneys fees pursuant to 42 U.S.C. § 1988 as well as punitive damages against DALE, VOLPE and GLADITZ .

## AS AND FOR COUNT SIX
## 42 U.S.C. §§ 1983 AND 1986 - FAILURE TO INTERVENE

226.     The Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 through 225 of this Complaint with the same force and effect as though fully set forth herein.

227.     Defendants Officer VOLPE and Officer GLADITZ knew or should have known that the detainment, false arrest, seizure of property and excessive force used against DOLORES SHARPE violated the Plaintiff's rights, guaranteed to her under the Fourth, Fifth and Fourteenth Amendment and 42 U.S.C. §§ 1981, 1983 and 1986.

33

228.    Each of the said Defendants had the authority, ability and concurrent duty under 42 U.S.C. § 1983 to prevent the false arrest, wrongful detainment, seizure of property and excessive force against Plaintiff, yet neglected to prevent said violations from occurring, and further failed to intervene to protect or aid the Plaintiff when such violations did in fact occur.

229.    Despite being placed on clear and detailed notice, former Commissioner DALE failed to stop these wrongful actions, which constitutes a breach of duty to do so under 42 U.S.C. § 1986.

230.    Defendants VOLPE and GLADITZ knew or should have known that the fabricated accusations against, and excessive force used against DOLORES SHARPE were violative of her Fourth, Fifth and Fourteenth Amendment rights to due process, and were tantamount to unequal protection under the law, in violation of the Plaintiff's fundamental rights under the constitution.

231.    Said DEFENDANTS had and continue to have the power to prevent the continued due process violations against DOLORES SHARPE, yet, failed to prevent or dismiss the fabricated charges against the Plaintiff, or to protect the Plaintiff from the unwarranted penalties of aid charges.

232.    Defendants COUNTY and DEPARTMENT's exoneration of and refusal to discipline the Defendants Officers VOLPE and GLADITZ for their misconduct against DOLORES SHARPE is neglectful of their duty to prevent the further violation of DOLORES SHARPE's right to compensation under 42 U.S.C §§ 1981, 1983, and 1986, with such violations occurring as a result of said officers being improperly cleared of any wrongdoing.

233.    As a direct consequence of the actions of DALE and Officers VOLPE and GLADITZ, acting in furtherance of their duties as agents of COUNTY and DEPARTMENT, DOLORES SHARPE suffered injuries, including but not limited to, temporary loss of pay, stigmatization, embarrassment, harassment, loss of liberty and the infringement of her rights guaranteed to her under

34

the U.S. Constitution.

234.    As a direct consequence of the of the actions of the Collective DEFENDANTS,

DOLORES SHARPE suffered temporary loss of employment, loss of standing in the community,

loss of time, criminal record, loss of freedom, loss of quality of life, arrest record, premature

retirement and loss of regular income, damage to name and reputation, special damage, attorney's

fees, incidental fees/costs, loss of property and other financial impairments.

235.    That by reason of the foregoing, Plaintiff has been damaged in the sum of three

million ($3,000,000.00) dollars- not including costs of this action, attorneys fees pursuant to 42

U.S.C. § 1988 as well as punitive damages against DALE, VOLPE and GLADITZ .

## AS AND FOR COUNT SEVEN
### 42 U.S.C. § 1983 - MUNICIPAL LIABILITY

236.    Plaintiff repeats and re-alleges each and every allegation contained in paragraph 1

through 235 of this Complaint with the same force and effect as though fully set forth herein.

237.    Prior to November 29, 2013 and since, the COUNTY has permitted and tolerated a

pattern and practice of unjustified, unreasonable and illegal uses of force and unreasonable and

unlawful searches and seizures against minorities including, but not limited to, African American

persons  by police officers of the DEPARTMENT and other local police departments within the

jurisdiction of the Nassau County. Although such illegal use of force and seizure is improper, the

officers involved were not seriously prosecuted, disciplined, or subjected to restraint, and such

incidents were in fact covered up with official claims that the use of force, and seizure of personal

property were justified and proper. As a result, DEPARTMENT police officers within their

jurisdiction were caused and encouraged to believe that civilian persons could be abused under

35

circumstances not requiring the use of excessive force, and that such mistreatment would in fact be permitted by the COUNTY.

238.    In addition to permitting a pattern and practice of improper abuses of the African American and female population in Nassau County, the COUNTY, DEPARTMENT, VOLPE, GLADITZ and DALE, have failed to maintain a proper system of investigation of all incidents of unjustified seizures of personal property, and excessive use of force by police officers.

239.    The COUNTY has failed to respond to the continuing and urgent need to prevent, restrain, and discipline police officers who wrongfully, violate Constitutional rights of citizens, use excessive force, and abuse African American and female civilians, and the COUNTY has failed to find that civilian complaints made against police officers are founded or valid in anyway; therefore the COUNTY is liable under 42 U.S.C. § 1983 because the COUNTY has had actual and/or constructive knowledge of the patterns of abuse and excessive force against minorities by its police officers, employees, and/or agents in violation of the United State Constitution, and because of the COUNTY, DEPARTMENT, VOLPE, GLADITZ and DALE's un-meaningful policy and custom for reviewing complaints of misconduct, the Defendant Officers relied upon that flawed policy to continue their patterns of abuse, excessive force, unlawful search and seizure of personal property and discriminatory legal enforcement, all in violation of the Plaintiff's rights.

240.    The COUNTY, DEPARTMENT, VOLPE, GLADITZ, and DALE have maintained a system of review of unjustified seizures of personal property, and excessive use of force by police officers that has failed to identify the improper brutality by police officers and failed to subject officers who brutalized citizens to discipline, closer supervision, or restraint, to the extent that it has become the custom of the COUNTY to tolerate the improper beatings, illegal arrests and other

36

wrongful actions by police officers.

241.   Upon information and belief, specific systemic flaws in the COUNTY brutality review process include, but are not limited to, the following:

    a.   Preparing reports regarding investigations of beatings shooting incidents as routine point-by-point justifications of police officer actions, regardless of whether such actions are justified;

    b.   Police officers unlawfully prosecuting African Americans, and violating rights granted to them by the United States Constitution;

    c.   Police officers investigating beatings systemically fail to credit testimony by non-police officer witnesses, and uncritically rely on reports by police officers involved in the incident;

    d.   Police officers investigating excessive force, fail to include in their reports relevant factual information which would tend to contradict the statements of the police officers involved;

    e.   Supervisory police officers at times issue public statements exonerating police officers for excessive use of force, unlawful searches and seizures of personal property, and use of unnecessary and excessive force before the investigation of the incident by the police department has been completed;

    f.   Reports in brutality cases are not reviewed for accuracy by supervisory officers.  Conclusions are frequently permitted to be drawn on the basis of clearly incorrect or contradictory information.

242.   The foregoing acts, omissions, systemic flaws, policies and customs of the Defendants COUNTY, DEPARTMENT, VOLPE, GLADITZ, and DALE caused the Defendant Officers  to believe that brutality and other improper actions would not be aggressively, honestly and properly investigated, with the foreseeable result that officers are most likely to use excessive force in situations where such force is neither necessary nor reasonable.

243.     As a direct and proximate result of the aforesaid acts, omissions, systemic flaws, policies, practices and customs of the Defendants COUNTY , DEPARTMENT, VOLPE, GLADITZ, and DALE unjustifiably harassed, searched and seized property from, illegally arrested and confined Plaintiff DOLORES SHARPE, a citizen of African American heritage, all in violation of her civil and constitutional rights, and DOLORES SHARPE has suffered with the temporary loss of employment and pay, as well as, from psychological harm, mental distress, humiliation, and embarrassment.

244.     Defendants COUNTY , DEPARTMENT, and DALE   were reckless, careless, intentional, negligent, and/or deliberately indifferent in the training, hiring, administration and supervision of the police officers, including Defendant Officers VOLPE and GLADITZ, with respect to the use of force against minority persons, the inquiry of minority persons, the bringing of charges against minority persons, and the recognition and preservation of the civil and constitutional rights of minority persons.

245.     That by reason of the foregoing, Plaintiffs suffer and continue to suffer irreparable injury and monetary damages in excess of three million ($3,000,000.00) dollars, as well as punitive damages against VOLPE and GLADITZ costs and attorneys fees, and any other relief this Court may find just and proper.

## AS AND FOR COUNT EIGHT
## 42 U.S.C. § 1985 CONSPIRACY TO VIOLATE CIVIL RIGHTS

246.     The Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 through 245 of this Complaint with the same force and effect as though fully set forth herein.

247.    Officers VOLPE and GLADITZ conspired to violate Ms. SHARPE's rights, when they collectively decided that they would ambush her on the side of the road, immediately after she left the parking lot of The Dollar Tree, as a reaction to SHARPE's exercise of her First Amendment right to free speech in response to the vile speech spewed at her by Officer VOLPE.

248.    Officers VOLPE and GLADITZ, decided collectively that in an effort to both violate the rights of the Plaintiff and to embarrass and undermine her authority, they would unlawfully seize her service weapon and personal property in violation of her Fourth Amendment rights.

249.    Officers VOLPE and GLADITZ collectively decided to mistreat SHARPE because she was an African American female, and collectively denied her, her due process rights under the Fourteenth Amendment.

250.    Officer VOLPE and Officer GLADITZ's accusations and allegations against Plaintiff were false, malicious, negligent, reckless, intentional and wrongful and were intended to cause Plaintiff injury and to harass Plaintiff due to her race/ color.

251.    DALE knew of the wrongful and abusive and violative acts of VOLPE and GLADITZ and conspired to allow their false claims, malicious prosecution, false arrest, abuse of process, mistreatment and other wrongful and demeaning acts to occur and continue including the detention of Plaintiff against her will, full processing, proffering of false charges, finger printing, taking mug shot, opposition of motions, supporting prosecution, providing false statements and testimony, agreeing to force Plaintiff to a public trial and other agreements and actions not yet fully known to Plaintiff.

252.    Defendant Officers VOLPE and GLADITZ brought about Plaintiff's seizure, arrest, detention and false accusation, all without lawful or proper basis or justification on account of her

race and gender. All without consideration of Plaintiff's rights in violation of all of Plaintiffs rights.

253. That the false arrest, false imprisonment, excessive force and violation of the laws of the State of New York and Plaintiff's civil rights were brought about and caused by the condoned and conspired actions of DEFENDANTS Officer VOLPE and GLADITZ and that the same was a clear and intentional abuse of process causing Plaintiff Damage. All of these rights are secured to Plaintiff by the provisions of the Constitution of the United States and by 42 U.S.C. § 1985.

254. That by reason of the foregoing, Plaintiff has been subjected to emotional damages, distress, pain, suffering, loss of self-esteem, self-doubt and exposed her to disgrace, public humiliation and embarrassment, was deprived of her Constitutional rights, and has been damaged in the sum of three million ($3,000,000.00) dollars - not including the cost of this action, attorneys fees pursuant 42 U.S.C. § 1988, and punitive damages.

## PRAYER FOR RELIEF

Plaintiff requests judgment as follows:

a.  First Count: in excess of three million ($3,000,000.00) dollars as well as punitive damages, costs and attorney's fees.

b.  Second Count: in excess of three million ($3,000,000.00) dollars as well as punitive damages, costs and attorney's fees.

c.  Third Count: in excess of three million ($3,000,000.00) dollars as well as punitive damages, costs and attorney's fees.

d.  Fourth Count: in excess of three million ($3,000,000.00) dollars as well as punitive damages, costs and attorney's fees.

e.  Fifth Count: in excess of three million ($3,000,000.00) dollars as well as punitive damages, costs and attorney's fees.

f.  Sixth Count: in excess of three million ($3,000,000.00) dollars as well as punitive damages, costs and attorney's fees.

g.     Seventh Count: in excess of three million ($3,000,000.00) dollars as well as punitive damages, costs and attorney's fees.

h.     Eighth Count: in excess of three million ($3,000,000.00) dollars as well as punitive damages, costs and attorney's fees.

i.     Attorney's fees and costs, pursuant to 42 U.S.C. § 1988.

j.     An Order granting such other legal and equitable relief as the court deems just and proper.

### PLAINTIFF DEMANDS A TRIAL BY JURY

Dated: Hempstead, New York
      November 10, 2015

LAW OFFICES OF
FREDERICK K. BREWINGTON

By: _____
FREDERICK K. BREWINGTON
*Attorneys for Plaintiff*
556 Peninsula Blvd.
Hempstead, New York 11550
(516)489-6959

41

DOCKET NO.:   CV-15-6446

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

DOLORES SHARPE,
*Plaintiff,*

-against-

COUNTY OF NASSAU,  NASSAU COUNTY
POLICE DEPARTMENT, CHARLES VOLPE,
in his individual and official capacities, VICTOR
GLADITZ, in his individual, and official capacities
and Former Police Commissioner THOMAS DALE,
in his individual and official capacities,

*Defendants.*
---------------------------------------------------------------X

SUMMONS AND COMPLAINT
---------------------------------------------------------------X

LAW OFFICES OF
FREDERICK K. BREWINGTON
*Attorneys for Plaintiff*
556 Peninsula Boulevard
Hempstead, New York 11550
(516) 489-6959