UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
DOLORES SHARPE,

                             Plaintiff(s),                **ORDER**
                                                               CV 15-6446 (ADS) (AYS)

       -against-

COUNTY OF NASSAU, NASSAU COUNTY
POLICE DEPARTMENT, CHARLES VOLPE,
in his individual and official capacities, VICTOR
GLADITZ, in his individual, and official capacities
and Fonner Police Commissioner THOMAS DALE,
in his individual and official capacities,

                             Defendants.
----------------------------------------------------------X
**ANNE Y. SHIELDS, Magistrate Judge:**

      This is a case alleging violations of 42 U.S.C. Sections 1981, 1983, 1985, 1986. See Complaint ("Compl."), Docket Entry ("DE") 1. Plaintiff Dolores Sharpe ("Sharpe"), is an African American female. Compl. ¶ 173. She is also a twenty year veteran of the Nassau County Police Department with ten years of patrol experience. Complaint ("Compl.") ¶ 15, Docket Entry ("DE") 1. Sharpe claims that two Nassau County Police Officers, Defendants Charles Volpe ("Volpe") and Victor Gladitz ("Gladitz"), violated Section 1981 by detaining, arresting, assaulting, and maliciously prosecuting Sharpe because of her race. Id. ¶¶ 153-155. She further claims the Defendants violated Section 1983 by (1) depriving her of her rights under the First and Fourteenth Amendments based on her race and/or color, and gender; (2) subjecting her to excessive force; (3) committing abuse of process; and (4) subjecting her to false arrest and malicious prosecution. Id. ¶¶ 162-225. The Complaint additionally includes a claim that each of the Defendants failed to intervene in violation of Sections 1983 and 1986, id. ¶¶ 226-235, a claim of municipal liability on the theory that the Defendants permitted a pattern and practice of improper abuses of the African American and female population in Nassau County, and a claim

of conspiracy to violate civil rights in violation of Section 1985. Id. ¶¶ 236-254.

I. Background Facts

According to Plaintiff's complaint, on November 29, 2013, Sharpe was in her car, which was parked in a public parking lot, located in West Hempstead, N.Y., close to the "Dollar Tree" store. Id. ¶ 20. Volpe, while in a Nassau County Police Car, approached Sharpe, rolled down his window and informed Sharpe that she was obstructing his view from an investigation. Id. ¶¶ 20-23. Volpe and Sharpe had a brief exchange, Sharpe parked her car, and walked toward the Dollar Tree. Id. ¶¶ 23-26. Volpe intercepted Sharpe before she entered the Dollar Tree, and advised her that she was to pull over the next time she saw a police car. Id. ¶¶ 25-28. Sharpe identified herself as a fellow police officer and offered her assistance. Id. ¶ 29. Volpe informed Plaintiff that he "didn't give a fuck" who she was or what she did. Id. ¶ 30. Sharpe responded "if that's the way you treat a fellow member of service, then fuck you too," and then she proceeded to enter the Dollar Tree. Id. ¶ 30.

Sharpe alleges that when she left the Dollar Tree, she got into her car. When she backed out of her parking spot, she saw a police car with its lights on moving at a rapid pace. Id. ¶ 35. Sharpe pulled over to allow the police car to go around her. Id. ¶ 36. Once it passed her, she exited the parking lot and drove onto Mayfair Avenue, where she once again observed the police car; this time it pulled her over. Id. ¶¶ 36-40. Plaintiff states that Volpe got out of the police car and was soon joined by Officer Gladitz. Id. ¶¶ 41-46. Plaintiff claims that, without any justification, the two officers harassed her, grabbed her, pushed her, and slammed her against her vehicle, where they kept her pinned. Id. ¶¶ 47-49. Plaintiff produced her police officer identification to the officers. Volpe snatched the identification with such force that the metal attached to it broke. Id. ¶ 50-59. Volpe asked to speak to a supervisor, at which time Gladitz

started falsely accusing Sharpe of swinging the broken chain at his face. Id. ¶¶ 59-68. Sharpe was then handcuffed and arrested. Id. ¶ 69. Despite her requests, Volpe and Gladitz refused to summon a supervisor, and instead insulted Sharpe, removed her gun, and transported her to the Fourth Precinct. Id. ¶¶ 70-84. At approximately 8:00 p.m. Police Benevolent Association (P.B.A.) Representative Police Officer Houghton arrived, and spoke to Sharpe. Id. ¶ 86. Sharpe was later informed that she was suspended for thirty days. Id. ¶¶ 87.

In addition to her suspension, Sharpe was also charged with resisting arrest, harassment, and having unlawfully tinted windows. Id. ¶¶ 94-96. Plaintiff claims that in an effort to support their false claims against Sharpe, Volpe and Gladitz fabricated the events that transpired by claiming Plaintiff struggled when she was arrested and attempted to strike Gladitz in the face with a chain. Id. ¶¶ 97-101. Plaintiff claims that both officers conspired to ambush and harass Sharpe because she is an African American woman. Id. ¶¶ 10-11. As to Sharpe's employer, the Nassau County Police Department (the "Department"), Sharpe claims that it turned a blind eye to the wrongdoing of both Volpe and Gladitz, and allowed her to be maliciously prosecuted on false charges. Id. ¶¶ 118-121, 139-41. She further claims that despite being put on notice, the Department and Nassau County (the "County") ignored evidence of abuse and the false testimony of Volpe and Gladitz. Sharpe further alleges that the Department and Police Commissioner Thomas Dale ("Dale") ignored voice and video evidence of the abuse that transpired and ignored the false testimony of Volpe and Gladitz. Id. ¶¶ 118-30.

On March 4, 2015, the criminal charges pending against Sharpe in Nassau County Criminal court were dismissed after a full trial in the matter of People v. Sharpe, (Docket No.2013NA027341). Id. ¶ 143. Sharpe claims that the County and Department were aware that Gladitz gave false testimony, but, nevertheless, refused to return Plaintiff's unjustly taken

compensation – even after Plaintiff's charges were fully dismissed. Id. ¶¶ 145-46.

II. Procedural History

Plaintiff commenced this action on November 11, 2015. DE 1. On December 12, 2015, the Defendants answered. DE 8. Thereafter, this Court held a pretrial conference on June 22, 2016. DE 9. During the conference, the parties informed the Court that they disputed whether certain documents related to an Internal Affairs investigation should remain confidential. The Court advised counsel that they were to submit a joint status letter by July 8, 2016, and if they could not come to an agreement with regard to the allegedly confidential Internal Affairs information, the letter to be submitted must contain an agreed upon briefing schedule as to matters in dispute. DE 9.

On July 8, 2016, counsel submitted a status letter. The letter informed the Court that the Plaintiff's acquittal resulted in a sealing of her records, and therefore Defendants were unable to furnish the records. DE 10. The letter further informed the Court that Defendants were waiting to hear back from Plaintiff regarding a stipulation and authorization Defendants had sent Plaintiff to permit the unsealing of Ms. Sharpe's police and District Attorney files, together with a proposed confidentiality order. DE 10. The Court granted the parties additional time in which to submit a proposed scheduling order, and further scheduled a status conference for August 22, 2016. See Order dated August 18, 2016. Counsel requested, and were granted, two adjournments. See DE 13, 14. The Court held the status conference on October 6, 2016. DE 16. During the conference, the Court so ordered a discovery schedule submitted by the parties, and further directed the parties to submit a fully briefed motion for a protective order regarding the Internal Affairs Unit Report. DE 16.

On October 21, 2016, Defendants, upon consent of Plaintiff, requested, and were granted,

an extension until November 10, 2016 to move for a protective order in addition to compelling Plaintiff to execute a mutually-acceptable confidentiality agreement. See DE 17; see also Electronic Order dated October 26, 2016. On November 10, 2016, Defendants filed their motion to compel Plaintiff to enter into a confidentiality agreement or, alternatively for the Court to "So Order" the Defendants' proposed confidentiality order. DE 18. Plaintiff filed her response on December 6, 2016. DE 19. As the motion is fully briefed, it is now ripe for decision.

III. The Current Motion

Defendants have not moved for a protective order regarding the Internal Affairs Unit Report and/or specific documents, but instead have moved for this Court to either compel Plaintiff to enter into a confidentiality order or "So Order" a blanket confidentiality order. DE 18. Defendants contend that a protective order is not appropriate under the circumstances. DE 18 at 3. They reason that (1) Plaintiff's demands were prematurely served during the time designated for Phase 1 discovery and therefore, not properly served; (2) Plaintiff was well aware that the County was requesting that she enter into a confidentiality agreement that would affect discovery; and (3) Defendants have not indicated a refusal to turn over non-privileged and relevant documents; instead, they are seeking to have certain documents, such as an Internal Affairs Unit report which investigated Plaintiff and the individual officers, be subject to an order of confidentiality. DE 18.

In support of its motion, Defendants have submitted the following exhibits: (1) an email chain between Defendants' attorney and Plaintiff's attorney, DE 18-1; (2) a copy of the Defendants' proposed confidentiality order, DE 18-2; and (3) an email chain between Defendants' attorney and Plaintiff's attorney, DE 18-3.

IV. Prior Communications Regarding Between the Parties

A review of the supporting emails makes clear that Defendants have been attempting to negotiate a confidentiality order with Plaintiff since December of 2015. DE 18-1 at 5. When Defendants' requested that Plaintiff stipulate to a confidentiality agreement in December of 2015, Plaintiff responded:

> Plaintiff does not agree to the materials being confidential between the Plaintiff and Defendant as Plaintiff will not agree to be silenced about the injustice and abuse of process into which the Defendants have engaged. Accordingly, Defendants may only use the unsealed information for purposes of this litigation, but Plaintiff is under no such obligation. If you would like to amend your stipulation, we will review it then.

DE 18-1 at 4. Thereafter, as demonstrated by the email exhibits, Defendants further attempted to negotiate an agreed upon stipulation of confidentiality. Plaintiff objected to a blanket confidentiality agreement, and stated she would only consider entering a confidentiality agreement if Defendants could identify what it claimed was confidential. DE 18-1 at 3; DE 18-3. Defendants continued to attempt to negotiate a stipulation of confidentiality by emailing Plaintiff's counsel on July 7, 11, 28, and August 29. See Defendants' Motion ("Def. Mot.") at 2, DE 18; DE 18-3. Defense counsel not only sent Plaintiff a copy of the stipulation, but also asked Plaintiff's attorney to call her if Plaintiff still objected to the stipulation. DE 18-3 at 4. Plaintiff's Counsel has yet to discuss proposed revisions with Defense Counsel. Def. Mot. at 2. Defendants have therefore moved to compel the Plaintiff to enter into an order of confidentiality, or for the Court to "So Order" the Defendants' proposed order. Id.

V. <u>Defendants' Proposed Order of Confidentiality</u>

Defendants' proposed order allows either party to designate as confidential any materials it deems to be confidential under the standards of Fed. R. Civ. P. 26(c). DE 18-2 at 1. The terms in the agreement do not apply to "confidential information which is public knowledge or which, after disclosure, becomes public knowledge other than through an act or omission of a party receiving the information." as confidential." Id. at 8. It further allows for an opposing party to object to the designation of confidential information, and requires the parties to meet and confer prior to bringing the dispute to the Court for resolution. Id. at 8.

VI. Disposition of the Motion

Defendants assert that their proposed Confidentiality Agreement provides the appropriate and necessary framework that would govern the parties' disclosure of sensitive and confidential information. Def. Mot. at 2. Defendants reason that their proposed agreement is regularly accepted in this district, it allows parties to designate appropriate materials as confidential, and its terms set forth a procedure to challenge a designation of confidentiality. Def. Mot. at 3.

Plaintiff does not argue against specific provisions in the proposed confidentiality order. Instead, she opposes Defendants' motion on the basis that (1) Defendants have not met their burden of establishing "good cause" to prevent unlimited access to the specific documents Defendants wish to keep confidential, DE 19 at 3; and (2) Defendants have "failed to illuminate the court any 'important or substantial' governmental interest that justifies restricting the First Amendment interests regarding the County violating the rights of Plaintiff and thousands of others." Plaintiff's Motion ("Pl. Mot.") at 5, DE 19.

Plaintiff additionally argues against the Court granting Defendants' motion on the basis that the "logjam of discovery arises from their absolute refusal to disclose and answer demands which have been pending for months with them seeking to force Plaintiff to agree to their

unjustified terms and conditions before they adhered to their obligation to either respond or timely seek a protective order." Pl. Mot. at 2, DE 19. However, it is clear that although Defendants attempted to confer with Plaintiff, Plaintiff failed to confer with Defendants to negotiate a stipulation of confidentiality suitable for both Parties. See Def. Mot. at 3; see also DE 18-1, 18-3. As such, the Court finds Defendants are not solely responsible for the current "logjam of discovery."

VII.     Applicable Legal Standards

A. Protective Orders

Rule 26(c) provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense…." Fed. R. Civ. P. 26(c). "It is well-settled that courts have broad power to enter protective orders under Rule 26(c) that prohibit parties from sharing discovery materials with non-litigants (such orders are typically referred to as 'confidentiality orders')." Dorsett v. Cty. of Nassau, 800 F. Supp. 2d 453, 457 (E.D.N.Y. 2011), aff'd sub nom. Newsday LLC v. Cty. of Nassau, 730 F.3d 156 (2d Cir. 2013). Generally, the Court may issue a protective order where "good cause" has been established. See Fed. R. Civ. P. 26(c)(1); Rofail v. United States, 227 F.R.D. 53, 54 (E.D.N.Y. 2005); Costa v. AFGO Mech. Servs., Inc., 237 F.R.D. 21, 23 (E.D.N.Y. 2006). A party may meet its burden to establish good cause by setting forth "particular and specific facts." Rofail, 227 F.R.D. at 54; see also Gordon v. Target Corp., 2016 WL 7048702, at *2 (E.D.N.Y. 2016); Costa, 237 F.R.D. at 24. ("Where a specific showing of good cause has been made, Rule 26(c) authorizes the court to issue a protective order."). Additionally, if a court determines documents are judicial documents, "a common law presumption of access attaches," and the court must balance the weight of the presumption against competing considerations. See

Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 119-20 (2d Cir. 2006). Similarly, a presumption also stems from the First Amendment. See Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc., 621 F. Supp. 2d 55, 71 (S.D.N.Y. 2007). If the document is not "judicial," then neither presumption applies, and "the movant need only make a baseline showing of good cause in order to justify the imposition of a protective order." Standard Inv. Chartered, 621 F. Supp. 2d at 62; see also Dorsett v. Cty. of Nassau, 762 F. Supp. 2d 500, 526 (E.D.N.Y.), aff'd, 800 F. Supp. 2d 453 (E.D.N.Y. 2011), aff'd sub nom. Newsday LLC v. Cty. of Nassau, 730 F.3d 156 (2d Cir. 2013). The burden to make a showing of good cause remains with the producing party. Dorsett, 762 F. Supp. 2d at 515.

"This does not mean, however, that the producing party must obtain its opponent's agreement, in advance, on each document as to which it contends that confidential treatment is warranted." Closed Joint Stock Co. "CTC Network," v. Actava TV, Inc., 2016 WL 1364942, at *4 (S.D.N.Y. 2016). Indeed, categories of information and documentation, such as tax returns, have been held to be "presumptively confidential." Johnson & Johnson Consumer Cos., Inc. v. Aini, 2008 WL 4470160, at *1 (E.D.N.Y. 2008); McMenamin v. Kingson, 1999 WL 47199, at *3 (S.D.N.Y. 1999). When materials that are to be produced contain both protectable and non-protectable documents, the producing party normally makes an initial determination as to what is and what is not confidential. Actava TV, Inc., 2016 WL 1364942, at *3. The producing party must exercise good faith in determining what documents meet the standards of Rule 26(c)(1). Id. Once a party has made a showing that documents require confidential treatment, the court has "broad discretion ... to decide when a protective order is appropriate and what degree of protection is required." Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984); see also Galella v. Onassis, 487 F.2d 986, 997 (2d Cir. 1973) ("The grant and nature of a protective order is

singularly within the discretion of the district court.")(citations omitted).

  B. Analysis

In this case, the Defendants contend that at least some of their documents are confidential. Specifically, they assert that "certain documents, such as an Internal Affairs Unit report which investigated Plaintiff and the individual officers, while being relevant to the underlying claims in this litigation, also contain sensitive information and are appropriate for treatment under an order of confidentiality." Def. Mot. at 3. The Court notes that although there may not be a presumption that all Internal Affair Reports are confidential, courts in this jurisdiction have held that in certain circumstances, such reports may be deemed confidential. See Dorsett v. Cty. of Nassau, 762 F. Supp. 2d 500, 522 (E.D.N.Y.), aff'd, 800 F. Supp. 2d 453 (E.D.N.Y. 2011), aff'd sub nom. Newsday LLC v. Cty. of Nassau, 730 F.3d 156 (2d Cir. 2013). The Court further notes that the "IAU Report was not filed with the Court and did not play any role in the performance of Article III functions, [thus it] … is not a judicial document in accordance with the applicable case law." Id. at 517. As such, no First Amendment right of access attaches to the IAU Report. Dorsett, 762 F. Supp. 2d at 526. Thus, Plaintiff's argument that Defendants must illustrate that an 'important or substantial' governmental interest justifies restricting the First Amendment is unpersuasive, as Defendants need only make a baseline showing of good cause. Id. Defendants have asserted that relevant documents in their possession contain sensitive information relating to Plaintiff and individual officers. As such, the Court finds that Defendants have made at least a threshold showing that a confidentiality order is warranted. Actava TV, Inc., 2016 WL 1364942, at *4; see also Dorsett, 762 F. Supp. 2d at 522 (quoting Byrnes v. Empire Blue Cross Blue Shield, 2000 WL 60221, at *6 (S.D.N.Y. 2000) (noting that "defendant offers a very thin and speculative basis for sealing, but, absent any

presumption against sealing, it should suffice for the limited purpose of protecting discovery materials as such.")).

The proposed confidentiality order submitted by Defendants has been regularly accepted and approved by this District. Def. Mot. at 2. The proposed order enables a party to designate documents or materials as confidential and provides a mechanism for the disclosure of sensitive materials that are not otherwise privileged. Id. It also sets forth a procedure for the receiving party to challenge a designation of confidentiality. Id.; 18-2 at 8. Such a "structure is both familiar and sensible." Actava TV, Inc., 2016 WL 1364942, at *4. This is especially true with respect to this case, as discovery has not progressed, despite the fact that it has been over a year since Plaintiff commenced this action. Indeed, as demonstrated in the email exhibits attached to Defendants motion, the lack of a confidentiality order has hindered the exchange of discovery. Furthermore, the structure proposed by Defendants' agreement appropriately balances the interests of both parties by allowing Plaintiff to receive prompt discovery while protecting Defendants' desire to protect sensitive information. Importantly, such a structure facilitates the purpose of the federal rules, which is to "secure the just, speedy, and inexpensive determination" of the case. Fed. R. Civ. P. 1. Additionally, the issuances of a confidentiality order will alleviate the undue burden and/or expense associated with excessive motion practice, as it will provide parties with the freedom to exchange documents without fear of disclosure, meaningfully confer on documents which they have both reviewed, and bring to the Court only the particular and clear matters pertaining to confidentiality on which they cannot agree.

## **Conclusion**

For the foregoing reasons, the Defendants' motion, appearing as Docket No. 18, is hereby granted to the extent that the Confidentiality Order submitted by Defendants, appearing as

Docket No. 18-2, is So Ordered. Discovery shall move forward. Should disputes arise as to the designation of confidential information, the Parties shall follow the steps set forth in the confidentiality order, and raise the issue with the Court at the appropriate time.

Dated: Central Islip, New York
December 19, 2016

**SO ORDERED:**

/s/ Anne Y. Shields
Anne Y. Shields
United States Magistrate Judge