UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DOLORES SHARPE,

                        Plaintiff,

                    -against-

COUNTY OF NASSAU, NASSAU COUNTY
POLICE DEPARTMENT, CHARLES VOLPE, in
his individual and official capacities, VICTOR
GLADITZ, in his individual and official capacities
and former Police Commissioner THOMAS DALE,
in his individual and official capacities,

                      Defendants.
------------------------------------------------------------X

CV-15-6446 (GRB)(AYS)

**DEFENDANTS' STATEMENT OF MATERIAL FACTS PURSUANT TO LOCAL RULE 56.1**

Defendants, County of Nassau, Nassau County Police Department, Charles Volpe, Victor Gladitz and Thomas Dale (collectively, "Defendants"), by their respective attorneys, hereby submit the following statement of material facts, pursuant to Local Rule 56.1, as to which they contend that there is no genuine issue of fact:

## **The Parties**

1. Plaintiff is a former Police Officer with the Nassau County Police Department ("the Department"). *See* Complaint at ¶ 9; Sharpe Dep. at pp. 18, 27.

2. The County of Nassau is a municipal corporation organized and existing pursuant to the laws of the State of New York. *See* Answer at ¶ 10.

3. The Department is an administrative arm of the County. *See* Answer at ¶ 11.

4. Thomas Dale is the former Police Commissioner of the Department. *See* Dale Dep. At pp. 9-10.

5. As Commissioner, Mr. Dale was the highest-ranking officer in the Department. *See id.* at p. 99.

1

6. At the time of the incident in question, Charles Volpe was a police officer employed by the Nassau County Police Department. *See* Volpe Dep. at pp. 9-11, 17-18.

7. Victor Gladitz is, and was at all times relevant to this action, a Nassau County police officer. *See* Gladitz Dep. at p. 14.

**Plaintiff's County Employment**

8. Plaintiff began her County employment as a police officer on March 31, 1995 when she began training at the Police Academy. *See* Sharpe Dep. at p. 18.

9. Approximately four years into her service with the County, Plaintiff became a Community Liaison Officer. *See* Sharpe Dep. at p. 21.

10. In approximately 2006 or 2007, Plaintiff took on an instructor role with the Community Affairs Bureau. *See* Sharpe Dep. at p. 21.

11. After working in Community Affairs for approximately five years, Plaintiff requested and was granted a transfer to the Applicant Investigations Unit. *See* Sharpe Dep. at p. 22.

12. While working in Applicant Investigations, which was located at Nassau Community College, Plaintiff was responsible for investigating the background of potential County civil service employees. *See* Sharpe Dep. at p. 24.

**Plaintiff's Training Relating to Off-Duty Incidents**

13. Both during the Police Academy and in subsequent trainings after completing the Academy, Plaintiff received training in how to conduct herself while off-duty and encountering an on-duty officer. *See* Sharpe Dep. at pp. 69-70, 325-26, 330; Nassau County Police Department Off-Duty and Plain Clothes Encounters Course materials; Nassau County Police Academy training materials.

14. Plaintiff's training was to immediately identify herself as an off-duty officer. *See* Sharpe

Dep. at pp. 70, 330; Off-Duty and Plain Clothes Encounters materials; Nassau County Police Academy training materials.

15. Plaintiff's training in off-duty encounters instructed that if someone identified himself/herself as an off-duty police officer, the on-duty officer is not expected to take his/her word for it but rather request the individual's police credentials. *See* Sharpe Dep. at p. 72.

16. She was also trained to immediately show her identification in a slow and methodical manner to prove that she was an officer. *See* Sharpe Dep. at pp. 70, 330; Off-Duty and Plain Clothes Encounters materials; Nassau County Police Academy training materials.

17. Plaintiff would expect an on-duty officer to request to see her identification or credentials while she was off-duty. *See* Sharpe Dep. at p. 72.

18. Falsely identifying one-self as a police officer is a criminal act. *See* Sharpe Dep. at p. 338.

19. Given the seriousness of such an offense, Plaintiff was trained not to accept anyone's word that he/she is a police officer. *See* Sharpe Dep. at p. 72.

20. If an officer reasonably believes that someone is impersonating an officer, it is appropriate for the officer to conduct an investigation, including conducting a car stop. *See* Sharpe Dep. at pp. 340-41.

21. Plaintiff also received training in how to behave if she was off-duty and pulled over by another officer. *See* Sharpe Dep. at p. 76.

22. As an experienced patrol officer, Plaintiff expects that the subject of a traffic stop would remain in his/her vehicle. *See* Sharpe Dep. at pp. 73-74.

23. Plaintiff would have a greater fear for her personal safety if someone who was being pulled over immediately exited his/her vehicle and approached the police vehicle. *See* Sharpe

3

Dep. at p. 75.

24. It is appropriate for a police officer to intervene where he observes a subject exiting her vehicle to approach another officer that made a traffic stop. *See* Sharpe Dep. at pp. 431-32.

25. Plaintiff was trained to cooperate with all directions of the on-duty officer. *See* Sharpe Dep. at pp. 76, 330.

26. As part of her training in on-duty, off-duty incidents, Plaintiff was trained that the on-duty officer was to treat all persons as a suspect until the officer had clear identification of the off-duty officer. *See* Sharpe Dep. at pp. 331-34.

**Plaintiff is Arrested**

27. On November 29, 2013, after her shift that day, Plaintiff traveled to a National Wholesale Liquidators store and then to the Dollar Tree store on Hempstead Turnpike in West Hempstead. *See* Sharpe Dep. at pp. 32-33, 234-35.

28. Plaintiff was driving her blue Nissan Xterra on this day. *See* Sharpe Dep. at p. 236.

29. Plaintiff's vehicle had tinted windows. *See* Sharpe Dep. at p. 238.

30. Plaintiff entered the parking lot to the Dollar Tree store from Mayfair Avenue and encountered a Nassau County Police vehicle driven by Officer Charles Volpe. *See* Sharpe Dep. at pp. 33-34.

31. At that time, Plaintiff did not know Officer Volpe. *See* Sharpe Dep. at p. 35.

32. Officer Volpe's Nassau County Police vehicle was blocking Plaintiff from turning into the parking space she was attempting to enter with her vehicle. *See* Sharpe Dep. at pp. 250-51; Volpe Dep. at p. 25.

33. When their cars were near each other, Officer Volpe could not see directly into the vehicle because of the tinting on the windows of Plaintiff's car. *See* Volpe Dep. at p. 26; Volpe

4

7/10/14 Hearing Testimony at p. 71.

34. As their cars were side-by-side and facing each other, Officer Volpe indicated to Plaintiff to roll down her window so that he could speak to her. *See* Sharpe Dep. at pp. 34, 37; Volpe Dep. at pp. 26-27; Volpe 7/10/14 Hearing Testimony at p. 21; Volpe 3/6/15 Statement at ¶ 3.

35. Plaintiff claims that she rolled down her window "as a courtesy." *See* Sharpe Dep. at p. 36.

36. When Plaintiff rolled down her window, Officer Volpe asked Plaintiff to move her vehicle because it was obstructing his view in connection with an investigation in which he was then engaged. *See* Sharpe Dep. at p. 37; Volpe Dep. at p. 27; Volpe 3/6/15 Statement at ¶ 3.

37. Plaintiff responded that she was just trying to park her car. *See* Sharpe Dep. at p. 37; Volpe 3/6/15 Statement at ¶ 3.

38. Plaintiff appeared to Officer Volpe to be upset during this interaction. *See* Volpe Dep. at p. 28.

39. Plaintiff then parked her car in an open parking space and Officer Volpe moved his vehicle. *See* Sharpe Dep. at pp. 37-38; Volpe Dep. at p. 29.

40. After parking, Plaintiff exited her car and walked to the front of the store when she heard someone attempting to get her attention. *See* Sharpe Dep. at p. 38; Sharpe 4/1/15 Statement at ¶ 5.

41. When she turned around, Plaintiff saw Officer Volpe, who told her to come over to his vehicle, which was now parked in front of the store. *See* Sharpe Dep. at pp. 38-39.

42. Plaintiff approached the driver's side window of Officer Volpe's vehicle. *See* Sharpe Dep. at p. 40; Volpe Dep. at pp. 34-35; Dollar Tree video footage.

43. Plaintiff told Officer Volpe that she was a "member of service." *See* Sharpe Dep. at p. 41;

Volpe 7/10/14 Testimony at p. 46.

44. During this interaction, Plaintiff cursed at Officer Volpe. *See* Volpe Dep. at pp. 35-36; Volpe 3/6/15 Statement at ¶ 3; Sharpe Dep. at pp. 45, 260; Sharpe 4/1/15 Statement at ¶ 6.

45. Plaintiff walked away from Officer Volpe's vehicle and entered the Dollar Tree store while he was speaking to her. *See* Sharpe Dep. at p. 46; Volpe Dep. at p. 36.

46. Plaintiff's interaction with Officer Volpe near the front entrance to the Dollar Tree was captured on a surveillance video (without audio) kept by the Dollar Tree. *See* Sharpe Dep. at pp. 109-10; Dollar Tree video footage.

47. Based upon the way that Plaintiff behaved and spoke to him, Officer Volpe did not believe that Plaintiff was a police officer. *See* Volpe 7/10/14 Testimony at p. 51; Volpe 3/6/15 Statement at ¶ 4; Sharpe Dep. at p. 338.

48. Plaintiff was in the store for only a few minutes. *See* Sharpe Dep. at p. 46; Dollar Tree video.

49. Upon exiting the store, Plaintiff walked directly to her car and did not observe any police vehicle in the parking lot. *See* Sharpe Dep. at pp. 46-47.

50. While Plaintiff was in the store, Officer Volpe contacted Officer Gladitz. *See* Volpe Dep. at pp. 37-38; Volpe 3/6/15 Statement at ¶ 6; Gladitz 3/7/15 Statement at ¶ 3.

51. Officer Gladitz was approximately one block away from the Dollar Tree store at a firehouse. *See* Gladitz Dep. at p. 36; Volpe Dep. at p. 41; Volpe 3/6/15 Statement at ¶ 7; Gladitz 3/7/15 Statement at ¶ 3.

52. Officers Volpe and Gladitz then spoke face-to-face and decided to further investigate based upon Plaintiff's behavior. *See* Volpe Dep. at pp. 41-43; Gladitz Dep. at pp. 35, 39-40, 49; Volpe 3/6/15 Statement at ¶ 7; Gladitz 3/7/15 Statement at ¶ 3.

53. As she was pulling out of the parking lot and onto Mayfair Avenue, Plaintiff observed the turret lights from Officer Volpe's vehicle flashing and she pulled into the shoulder of Mayfair Avenue. *See* Sharpe Dep. at pp. 47-48; Volpe Dep. at p. 54.

54. Officer Volpe decided to pull Plaintiff's car over because of the excessive tint of her windows and because he felt obligated to investigate her claim that she was a police officer in light of her behavior. *See* Volpe 7/10/14 Testimony at pp. 50-51, 71.

55. Immediately after pulling over, Plaintiff exited her vehicle and approached Officer Volpe's police vehicle. *See* Sharpe Dep. at p. 49; Volpe Dep. at p. 61; Volpe 7/10/14 Testimony at p. 18; Volpe 3/6/15 Statement at ¶ 7; Gladitz 3/7/15 Statement at ¶ 3.

56. As she moved towards Officer Volpe's police vehicle, she was screaming, yelling and cursing. *See* Sharpe Dep. at pp. 264-66; Volpe Dep. at pp. 61-62; Gladitz Dep. at pp. 43, 45, 47.

57. When she got out of her car, Plaintiff yelled at Officer Volpe as to why he had pulled her over. *See* Sharpe Dep. at pp. 51; 265; Volpe Dep. at p. 62; Volpe 7/10/14 Testimony at p. 18; Volpe 3/6/15 Statement at ¶ 7; Gladitz 3/7/15 Statement at ¶ 3.

58. As she was yelling at Officer Volpe, Plaintiff used the word "fuck." *See* Sharpe Dep. at p. 264; Volpe Dep. at p. 62; Volpe 7/10/14 Testimony at pp. 18-19; Volpe 3/6/15 Statement at ¶ 7.

59. While Plaintiff was approaching his police vehicle, Officer Volpe was still in his vehicle. *See* Sharpe Dep. at p. 49; Gladitz Dep. at pp. 43, 45, 47; Volpe Dep. at pp. 61-64.

60. As she was approaching Officer Volpe's vehicle, Plaintiff was intercepted by Officer Victor Gladitz, who prevented her from further confronting Officer Volpe. *See* Sharpe Dep. at pp. 49-50; Gladitz Dep. at pp. 47-48; Volpe Dep. at p. 63.

61. Plaintiff did not previously know Officer Gladitz. *See* Sharpe Dep. at p. 50.

62. Officer Gladitz asked Plaintiff more than once to calm down. *See* Sharpe Dep. at p. 404;

7

Gladitz Dep. at p. 47; Volpe Dep. at pp. 63-64; Volpe 3/6/15 Statement at ¶ 7; Gladitz 3/7/15 Statement at ¶ 3.

63. To this point, Plaintiff had not yet identified herself as a police officer to Officer Gladitz. *See* Sharpe Dep. at p. 67.

64. Plaintiff then stated she was a "cop," to which Officer Gladitz stated that he did not know who she was. *See* Sharpe Dep. at pp. 52, 325; Gladitz Dep. at p. 48; Gladitz 3/7/15 Statement at ¶ 3.

65. Plaintiff had not, to this point, taken out her police identification or badge to show Officer Gladitz. *See* Sharpe Dep. at p. 69; Gladitz Dep. at p. 55; Volpe 3/6/15 Statement at ¶ 7.

66. Plaintiff was admittedly upset and cursed at Officer Gladitz. *See* Sharpe Dep. at p. 406; Gladitz Dep. at p. 47; Gladitz 3/7/15 Statement at ¶ 4.

67. After Officer Volpe got out of his vehicle and approached, Plaintiff stated that she was a member of service. *See* Sharpe Dep. at p. 53; Volpe Dep. at p. 65; Gladitz 3/7/15 Statement at ¶ 5.

68. Officer Volpe indicated that he did not know or believe that Plaintiff was a police officer. *See* Sharpe Dep. at p. 53.

69. During this exchange, Officer Volpe requested that Plaintiff show him her police identification. *See* Sharpe Dep. at pp. 54, 335; Volpe Dep. at p. 66; Gladitz Dep. at p. 55.

70. Plaintiff understood that Officer Volpe wanted to confirm her identity when he requested her police identification. *See* Sharpe Dep. at p. 336.

71. Plaintiff reached into her pocket to retrieve and show her identification to Officer Volpe. *See* Sharpe Dep. at p. 55; Gladitz Dep. at p. 56; Gladitz 3/7/15 Statement at ¶ 6.

72. After Plaintiff retrieved the identification from her pocket, Officer Volpe took the

identification and Plaintiff's badge. *See* Sharpe Dep. at pp. 55-56; Volpe Dep. at pp. 68-70; Gladitz Dep. at p. 57.

73. When Officer Volpe took the identification, it broke away from the chain to which it was attached. *See* Sharpe Dep. at p. 58; Gladitz Dep. at p. 57; Volpe Dep. at p. 70; Photo of chain; Volpe 7/10/14 Testimony at p. 26; Volpe 3/6/15 Statement at ¶ 7.

74. Officer Volpe walked back toward his vehicle with the identification. *See* Sharpe Dep. at p. 58; Volpe Dep. at p. 72; Volpe 7/10/14 Testimony at pp. 24-25; Volpe 3/6/15 Statement at ¶ 7.

75. Plaintiff then placed her hands in her pockets. *See* Sharpe Dep. at p. 347; Gladitz Dep. at p. 65; Gladitz 3/7/15 Statement at ¶ 6.

76. Officer Gladitz placed his hands on Plaintiff's forearms while her hands were in her pockets. *See* Gladitz Dep. at pp. 65-66; Gladitz 3/7/15 Statement at ¶ 6.

77. At some point, Plaintiff's hands came out of her pockets. *See* Sharpe Dep. at p. 62; Gladitz Dep. at pp. 65-66; Gladitz 3/7/15 Statement at ¶ 6.

78. Plaintiff's right hand came out of her pocket to approximately shoulder level while the broken chain was in her hand. *See* Sharpe Dep. at pp. 62, 65-66; Gladitz Dep. at 67; Gladitz 3/7/15 Statement at ¶ 6.

79. The chain was only a few inches from Officer Gladitz's face. *See* Sharpe Dep. at p. 66; Gladitz Dep. at p. 70; Gladitz 3/7/15 Statement at ¶ 6.

80. Officer Gladitz stated that Plaintiff had tried to strike him with the chain and called her a bitch. *See* Sharpe Dep. at pp. 77-78; Gladitz Dep. at pp. 77, 80; Volpe Dep. at p. 88; Volpe 3/6/15 Statement at ¶ 7; Gladitz 3/7/15 Statement at ¶ 6; Partial recording.[1]

81. Plaintiff yelled and cursed at Officers Volpe and Gladitz during this exchange. *See*

---

[1] A portion of the traffic stop was captured by a cell phone recording made by Officer Volpe. *See* Sharpe Dep. at pp. 117-18, 122; Volpe Dep. at pp. 72, 74-75; Partial ecording.

Sharpe Dep. at pp. 92-93; Gladitz 3/7/15 Statement at ¶ 6; Video.

82. Officer Gladitz then placed Plaintiff in handcuffs. *See* Sharpe Dep. at p. 78; Gladitz Dep. at p. 71; Volpe Dep. at p. 79; Volpe 7/10/14 Testimony at pp. 26-27; Volpe 3/6/15 Statement at ¶ 7; Gladitz 3/7/15 Statement at ¶ 6.

83. Officer Volpe came out of his vehicle to assist with placing Plaintiff in handcuffs and then returned to his vehicle. *See* Sharpe Dep. at p. 79; Gladitz Dep. at p. 73; Volpe Dep. at p. 79.

84. During the traffic stop, Plaintiff questioned Officer Volpe about how much time he had "on the job." *See* Sharpe Dep. at pp. 402-03; Volpe Dep. at p. 65; Partial recording.

85. A third police vehicle, driven by Officer Anthony Carbone, arrived on the scene. *See* Sharpe Dep. at p 79; Volpe Dep. at pp. 91-92; Volpe 3/6/15 Statement at ¶ 8; Gladitz 3/7/15 Statement at ¶ 6.

86. Around the time that Officer Carbone arrived on scene, Plaintiff requested that a supervisor be called to the scene. *See* Sharpe Dep. at p. 79.

87. But Officer Volpe had already called for a supervisor. *See* Gladitz 3/7/15 Statement at ¶ 8.

88. Plaintiff told Officer Carbone that she was a member of service and did not understand what was happening, to which Officer Carbone replied that he was just there to assist. *See* Sharpe Dep. at p. 82.

89. Plaintiff told Officer Carbone to remove the handcuffs, but he said he could not do that. *See* Sharpe Dep. at p. 421.

90. Officer Carbone stayed with Plaintiff while Officers Volpe and Gladitz spoke at Officer Gladitz' vehicle. *See* Sharpe Dep. at p. 83; Volpe 3/6/15 Statement at ¶ 9.

91. According to Officer Carbone, Plaintiff called him a "fucking rookie." *See* Carbone

10

10/8/14 Statement.

92. Officer Volpe came over to Plaintiff to inquire if she had her service weapon. *See* Sharpe Dep. at p. 84; Volpe 3/6/15 Statement at ¶ 9.

93. Plaintiff advised, for the first time, that her service revolver was in a holster on her right hip. *See* Sharpe Dep. at p. 84-86, 88; Volpe 3/6/15 Statement at ¶ 9.

94. Plaintiff's service revolver was then removed from the holster and secured in Officer Volpe's vehicle. *See* Sharpe Dep. at p. 84; Volpe 3/6/15 Statement at ¶ 9.

95. Officer Gladitz inquired where Plaintiff worked within the Department, to which Plaintiff responded, "Applicant Investigations." *See* Sharpe Dep. at p. 77; Gladitz 3/7/15 Statement at ¶ 8.

96. Sergeants Kevin Carroll and Gregory Boyce then arrived on scene. *See* Sharpe Dep. at pp. 80, 89; Volpe Dep. at p. 91; Volpe 3/6/15 Statement at ¶ 10; Gladitz 3/7/15 Statement at ¶¶ 10-11.

97. Sergeant Boyce spoke with Officers Volpe and Gladitz first and then spoke with Plaintiff about what happened. *See* Sharpe Dep. at p. 90; Volpe 3/6/15 Statement at ¶ 10; Gladitz 3/7/15 Statement at ¶ 10.

98. Sergeant Boyce also removed Plaintiff's handcuffs. *See* Sharpe Dep. at p. 90; Volpe 3/6/15 Statement at ¶ 15.

99. Officer Volpe suggested that Plaintiff be taken as a 10-62 (mental health) based on what he perceived to be her aggressive, irrational and erratic behavior. *See* Volpe Dep. at pp. 86-87; Volpe 3/6/15 Statement at ¶ 13.

100. Sergeants Boyce and Carroll then transported Plaintiff to the Fourth Precinct. *See* Sharpe Dep. at p. 91; Volpe Dep. at p. 106; Volpe 3/6/15 Statement at ¶ 15; Gladitz 3/7/15 Statement at ¶ 12.

101. After arriving at the Fourth Precinct, Plaintiff was placed in the kitchen and then moved to the records room, with Sergeant Carroll watching her at all times. *See* Sharpe Dep. at p. 95.

102. Plaintiff spoke with her union representative and her Commanding Officer, who had called the Fourth Precinct to speak with her. *See* Sharpe Dep. at pp. 96-97.

103. While meeting with her union representative, Plaintiff advised of her desire to speak with a lawyer. *See* Sharpe Dep. at p. 98.

104. Plaintiff was then photographed and fingerprinted before meeting with Sergeant Joanne Distler of Internal Affairs. *See* Sharpe Dep. at p. 98.

105. Officers Volpe and Gladitz informed the Internal Affairs Unit ("IAU") that they were comfortable with having Plaintiff referred to the Department's Employee Assistance Program rather than being charged. *See* Volpe 3/6/15 Statement at ¶ 17.

106. Fourth Precinct Lieutenant Jeffrey Douglas was instructed by his superiors to proceed with processing the arrest of Plaintiff. *See* Douglas 12/4/13 Statement at ¶ 6.

107. After meeting with Plaintiff, an IAU officer informed Officers Volpe and Gladitz that the Department was proceeding with the processing of Plaintiff's arrest. *See* Volpe 3/6/15 Statement at ¶ 17; Gladitz 3/7/15 Statement at ¶ 14.

108. It was not Officers Volpe or Gladitz' decision to process Plaintiff's arrest. *See* Volpe 3/6/15 Statement at ¶ 17; Volpe Dep. at p. 85.

109. IAU Sergeant Distler advised Plaintiff that she was being charged with resisting arrest. *See* Sharpe Dep. at p. 98.

110. Plaintiff was charged with violations of Penal Law §§ 205.30 (Resisting Arrest) and 240.26(1) (Harassment in the second degree); and Vehicle and Traffic Law § 240.26(1)

(Tinted side windows). *See* Volpe Dep. at p. 131; Criminal Informations.

111. Commanding Officer of the Fourth Precinct Inspector Joseph Barbieri then advised Plaintiff that then Commissioner Dale was suspending her for 30 days without pay. *See* Sharpe Dep. at p. 99; Notification of Suspension.

112. Plaintiff signed a Department Notification of Suspension, acknowledging her suspension before being transported back to her personal vehicle. *See* Sharpe Dep. at p. 99; Notification of Suspension.

113. Plaintiff also signed a Physical Condition Questionnaire, before being released from the Fourth Precinct, indicating that she did not suffer any physical injuries. *See* Sharpe Dep. at pp. 357-58, 393; Physical Condition Questionnaire.

114. Plaintiff did not sustain any physical injuries from the incidents alleged in this lawsuit. *See* Sharpe Dep. at p. 393.

115. Officers Volpe and Gladitz did not make any comments toward Plaintiff that were racial in nature. *See* Sharpe Dep. at p. 262.

### Commissioner Dale Suspends Plaintiff for 30 Days

116. On November 29, 2013, then-Commissioner Dale received a phone call stating that Plaintiff had been arrested while off duty. *See* Dale Dep. at pp. 36, 39.

117. Plaintiff had absolutely no interaction with Commissioner Dale on November 29, 2013. *See* Sharpe Dep. at p. 143.

118. Upon learning that she had been arrested, Commissioner Dale ordered that Plaintiff be suspended without pay because of the arrest. *See* Dale Dep. at pp. 36-37.

119. Commissioner Dale also immediately referred the matter to the Department's Internal Affairs Bureau. *See* Dale Dep. at p. 40.

120. The referral was done verbally. *See* Dale Dep. at pp. 50-51.

121. All police officer suspensions authorized by Commissioner Dale during his tenure were without pay. *See* Dale Dep. at p. 73.

122. It was Plaintiff's understanding that any officer arrested on criminal charges was suspended as a matter of course. *See* Sharpe Dep. at p. 104.

123. Plaintiff's suspension was for 30 days, at which point she returned to work. *See* Sharpe Dep. at p. 230.

**The Criminal Trial**

124. Plaintiff was charged with resisting arrest, harassment in the second degree and a traffic violation for having tinted side windows. *See* Sharpe Dep. at p. 105; District Court Information; Uniform Traffic Ticket.

125. The front driver and passenger windows and part of the front of Plaintiff's Nissan Xterra windshield were tinted. *See* Sharpe Dep. at p. 238, 242.

126. The tint was from an after-market tint job at an autobody shop in Bellmore. *See* Sharpe Dep. at p. 239.

127. The traffic violation for having tinted windows was dismissed by the Nassau County District Court on May 27, 2014 because the prosecution failed to timely serve a supporting deposition for this charge. *See* May 27, 2014 Decision at p. 12.

128. The Nassau County District Court expressly denied Plaintiff's request to dismiss the criminal charges based on a lack of probable cause. *See* May 27, 2014 Decision at pp. 12-13.

129. Plaintiff went to trial with regard to the remaining charges in 2014, although the hearing was adjourned into 2015. *See* Sharpe Dep. at p. 106.

130. A motion to dismiss was made by Plaintiff's counsel at the criminal trial. *See*

14

Sharpe Dep. at p. 411.

131. The motion was denied and the case proceeded to a jury determination. *See* Sharpe Dep. at p. 414.

132. Plaintiff was acquitted of in March 2015 after four days of jury deliberations. *See* Sharpe Dep. at pp. 107, 122-23.

### Plaintiff's Press Conferences

133. Following her arrest, Plaintiff and her attorney held a press conference at which she spoke out about alleged mistreatment of female minority officers in the Department. *See* Sharpe Dep. at p. 156.

134. Plaintiff and her attorney held another press conference after her acquittal in or about April 2015 to discuss the alleged mistreatment of female minority officers in the Department. *See* Sharpe Dep. at pp. 156-57.

### Plaintiff's County Employment After Her Acquittal

135. Following her acquittal, Plaintiff was restored to full active duty in Applicant Investigations. *See* Sharpe Dep. at pp. 122-23; Letter Restoring to Full Duty.

136. Upon Plaintiff's acquittal, the Internal Affairs Bureau re-commenced and completed its investigation that was on hold during the criminal proceeding. *See* Sharpe Dep. at p. 140.

137. Plaintiff retired from her County employment in July 2015. *See* Sharpe Dep. at pp. 27-28.

## Procedural History

138. Plaintiff filed the Complaint on November 13, 2015. *See* Complaint.

Dated: Melville, New York
April 18, 2022

Yours, etc.
LAMB & BARNOSKY, LLP

By: _____
Richard K. Zuckerman
Matthew J. Mehnert
Attorneys for Defendants County of Nassau, Nassau
County Police Department and Thomas Dale
534 Broadhollow Road, Ste. 210
P.O. Box 9034
Melville, New York 11747-9034
(631) 414-5808

SOKOLOFF STERN, LLP
Steven Stern, Esq.
Attorneys for Defendant Charles Volpe
179 Westbury Avenue, 2nd Floor
Carle Place, New York 11514
(516) 334-4500

MONTFORT, HEALY, MCGUIRE & SALLEY, LLP
James Murphy, Esq.
Attorneys for Defendant Victor Gladitz
840 Franklin Avenue
P.O. Box 7677
Garden City, New York 11530
(516) 747-4082