

179 WESTBURY AVENUE, CARLE PLACE, NEW YORK 11514  PHONE (516) 334-4500  FAX (516) 334-4501  WWW.SOKOLOFFSTERN.COM

STEVEN C. STERN
SSTERN@SOKOLOFFSTERN.COM

April 18, 2022

VIA ECF
Honorable Gary R. Brown
United States District Judge
Eastern District of New York
100 Federal Plaza
Central Islip, NY 11722

      Re:    *Sharpe v. County of Nassau, et al.*
               Docket No. 15-CV-6446 (GRB)(AYS)

Your Honor:

      We represent defendant Charles Volpe in this § 1983 false arrest case, and request a pre-motion conference in anticipation of moving for summary judgment under Fed. R. Civ. P. 56.

      This case involves plaintiff's arrest for harassment, resisting arrest, and a tinted window violation following her interactions with Police Officers Charles Volpe and Victor Gladitz. Plaintiff, also a Nassau County Police Officer who was off-duty in her personal vehicle, interacted with PO Volpe while he was conducting an investigation in a shopping center parking lot. When PO Volpe asked plaintiff to move her vehicle because she was obstructing his vantage point, she responded that his police car was blocking her. (Compl. ¶ 24; Crim. Tran. 833.) They exchanged words, including her cursing at him; she said she was a police officer, and she walked away.

      PO Volpe, who did not believe a fellow officer would behave as she did, also noticed her windows were illegally tinted. He conferred with PO Gladitz, and they proceeded to investigate.[1] He saw plaintiff re-enter her vehicle, and he pulled her over. As soon as she stopped, plaintiff ran out of her vehicle towards PO Volpe's police car, screaming and cursing (by her own admission), and confronted him. As most civilians, and all police officers (including plaintiff) know, subjects of a car stop should not exit their vehicles for the safety of everyone involved. Officer Gladitz detained her for safety reasons, as he tried to calm her down. Sharpe admits Officer Gladitz was telling her to calm down (Crim. Tr. 918), and that she responded, "Take your fucking hands off me." (Crim. Tr. 920.) Plaintiff eventually provided her police identification, and Officer Volpe walked away to verify it. Shortly thereafter, plaintiff removed a chain from her pocket and swung it within a few inches of PO Gladitz's face. PO Gladitz exclaimed that she tried to hit him with it, and he started to handcuff her. Officer Volpe walked over, and assisted in handcuffing her. Police supervisors arrived, and decided that plaintiff should be arrested.

      The complaint alleges a laundry list of allegations stemming from plaintiff's arrest and

---

[1] Impersonating a police officer is a crime. Penal Law § 190.25.

criminal prosecution. *Ab initio*, there was probable cause for the car stop. Plaintiff had claimed she was a police officer, but behaved towards Officer Volpe in a manner that caused him to question that representation. She also had what appeared to be illegal side-tinted windows,[2] which justified the stop regardless of the officers' alleged motivations. *See Whren v. United States*, 517 U.S. 806 (1996). Once plaintiff exited her vehicle at the car stop, and ran towards PO Volpe's car yelling and cursing, they had a basis to detain her. *See Myrick v. DeMarco*, No. 06-CV-2418 (JS), 2010 WL 652980, at *4 (E.D.N.Y. Feb. 19, 2010). Then, plaintiff's aggressive conduct towards the officers, culminating in swinging a chain towards Officer Gladitz's face, justified the arrest, at a minimum, for harassment in the second degree.[3] *See Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006); *Doe v. City of New York*, No. 18-CV-670 (ARR) (JO), 2018 WL 3824133, at *4 (E.D.N.Y. Aug. 9, 2018) (even if an "initial … car stop is unlawful, as long as the officers develop probable cause by the time of the arrest, a false arrest claim will not lie under § 1983.") (citing *Townes v. City of New York*, 176 F.3d 138, 145 (2d Cir. 1999)). The false arrest, malicious prosecution, and abuse of process claims are barred by the existence of probable cause.

In addition, the fact that the decisions to arrest and prosecute plaintiff were made by supervisors and the District Attorney's office, defeats plaintiff's claims. At a minimum, it severs the chain of causation for malicious prosecution. *See Bail v. Ramirez*, No. 04-CV-5084 (WHP), 2007 WL 959045, at *8 (S.D.N.Y. Mar. 29, 2007). And the fact that the criminal court denied plaintiff's motion to dismiss the charges based on lack of probable cause is further evidence of probable cause. Plaintiff's abuse of process claim also fails because she has no evidence her arrest was occasioned by any "collateral objective" by PO Volpe. *See Hernandez v. Cty. of Nassau*, No. 17-CV-1646 (MKB), 2022 WL 513929, at *11 (E.D.N.Y. Feb. 20, 2022) (assertion of race and sexual orientation discrimination insufficient to meet collateral objective element for abuse of process claim) (citing cases).

To the extent plaintiff intended to assert an excessive force claim against Officer Volpe, it must be dismissed. At most, Officer Volpe assisted Officer Gladitz when he handcuffed the plaintiff, and then walked away. (Sharpe Dep. p. 79.) The Complaint does not allege facts demonstrating that Officer Volpe used any force other than helping to handcuff her. And plaintiff admitted she was completely uninjured. (Sharpe Dep. p. 393.) *See Jack v. City of New York*, No. 15-CV-679 (RRM)(RLM), 2017 WL 6626243, at *7 (E.D.N.Y. Sept. 28, 2017) (even "tight handcuffing does not constitute excessive force unless it causes some injury beyond temporary discomfort."); *Wilder v. Vill. of Amityville*, 288 F. Supp. 2d 341, 344 (E.D.N.Y. 2003), *aff'd*, 111 F. App'x 635 (2d Cir. 2004). Plaintiff does not even allege tight handcuffing in this case.

Plaintiff's race and gender discrimination claims must be dismissed. Plaintiff does not that Officer Volpe said anything that implicated race whatsoever. She just "believes" he was motivated by race. (Sharpe Dep. p. 261.) *See Miller v. Terrillion*, 391 F. Supp. 3d 217, 225 (E.D.N.Y. 2019).

---

[2] Should this case proceed to trial, defendant will seek a spoliation charge regarding the tinting of plaintiff's windows. She testified at her December 2020 deposition that she had her side windows tinted in the early 2000s, but shortly after her deposition she removed the tint, obfuscating defendants' efforts to inspect the vehicle for this litigation.

[3] A person is guilty of harassment in the second degree when, with intent to harass, annoy or alarm another person: (1) He or she strikes, shoves, kicks or otherwise subjects such other person to physical contact, or <u>attempts or threatens to do the same</u>. N.Y. Penal Law § 240.26 (emphasis added).

The only fact plaintiff posits in support of her gender discrimination claim against PO Volpe is that he called her "sweetheart" when she questioned his experience as a police officer. (Compl. ¶¶ 71–72.) At most this was a stray remark that was unconnected to the underlying circumstances of the arrest. *See Bethea v. JP Morgan Chase*, No. 15-CV-3544 (PKC)(RML), 2019 WL 4805141, at *8 (E.D.N.Y. Sept. 30, 2019) (mere subjective belief that plaintiff was victim of discrimination insufficient to support inference of discrimination).

Plaintiff's First Amendment free speech claim fails for several reasons. It is premised on plaintiff's purported expressive conduct regarding the treatment of "female minorities." (Compl. ¶ 164.) She testified that this allegation relates to speech that <u>followed</u> her arrest by POs Volpe and Gladitz. (Sharpe Dep. pp. 155-56.) Nevertheless, the existence of probable cause—as there was here—also defeats a First Amendment retaliatory arrest claim. *See Nieves v. Bartlett*, 139 S. Ct. 1715, 1725 (2019). And even if plaintiff was able to show an absence of probable cause, she is required to show the retaliation for free speech was a substantial or motivating factor behind the arrest. *Id.* There is no such evidence.

Plaintiff's conspiracy claim is barred by the intra-corporate conspiracy doctrine. *See Rizk v. City of New York*, 462 F. Supp. 3d 203, 225 (E.D.N.Y. 2020). Since both POs Volpe and Gladitz were Nassau County police officers acting within the scope of their duties, they were incapable of legally conspiring with each other. Plaintiff's failure to intervene claims should be dismissed for the same reasons each of the underlying claims should be dismissed, as stated above.

Finally, PO Volpe is entitled to qualified immunity. He did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly*, 137 S.Ct. 548, 551 (2017). "A right is clearly established when it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 7 (2021) (citing *Mullenix v. Luna*, 577 U.S. 7 (2015)). Existing precedent must have placed the question "beyond debate." *Mullenix*, 577 U.S. at 14. There is no case with similar circumstances that would have placed PO Volpe on notice that his conduct was "clearly unlawful." *Nagle v. Marron*, 663 F.3d 100, 114 (2d Cir. 2011) (citing *Saucier v. Katz*, 533 U.S. 194, 195 (2001) ("If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate.") (overruled on other grounds)). It was not "clearly unlawful" to: (a) investigate plaintiff's representation that she was a police officer; (b) pull her over for driving with tinted side windows and in furtherance of the investigation; (c) assist PO Gladitz in handcuffing and arresting her after she swung a metal chain near his face; and (d) process the arrest for, *inter alia*, harassment in the second degree, which was directed and authorized by superior officers in the Nassau County Police Department.

We look forward to discussing these issues with the Court at a pre-motion conference.

Respectfully submitted,

SOKOLOFF STERN LLP

STEVEN C. STERN