

THE LAW OFFICES OF
# FREDERICK K. BREWINGTON

***Attorneys and Counselors at Law***
556 Peninsula Blvd., Hempstead, New York 11550
Phone: 516-489-6959 • Fax: 516-489-6958 •
www.brewingtonlaw.com

Frederick K.Brewington
Albert D. Manuel III

Of Counsel
Oscar Holt III
Jay D. Umans

June 3, 2022

***VIA ELECTRONIC CASE FILING***
Hon. Gary R. Brown
United States District Court
Eastern District of New York
Central Islip, New York 11722

>    **Re:**    ***Sharpe v. County of Nassau, et. al.***
>    ***Docket No.: CV-15-6446 (GRB)(AYS)***

Dear Judge Brown:

We represent Dolores Sharpe in the above-referenced matter. Ms. Sharpe brings claims sounding in, among other things, false arrest, malicious prosecution, fabrication of evidence, and race and gender discrimination. We submit this letter in opposition to the three letters of the County of Nassau, Defendant Gladitz and Defendant Volpe who have request permission to file summary judgment motions. Except as noted below, these motions will fail.

Ms. Sharpe is a 60-year old African-American female with dread-locked styled hair. She is also a 20 year veteran of the Nassau County Police Department. Prior to her arrest, Ms. Sharpe served in the Department's Applicant Investigation Unit. Her work has been recognized with awards from such organizations as the Grand Council of the Guardians. Her controlled and calm demeanor has allowed her to serve Nassau County and its residents in such units as Community Affairs-teaching in public schools and at senior events; Court Liaison in the District Court; and dignitary details such as the Presidential Debate of 2012 and the Black Course at Bethpage for the Open. Officer Sharpe's police work included 10 solid years on patrol, and her work for the United Nations and service in the United States Air Force (military police) have provided her with a top-shelf education in policing. When this practical experience is added to her Bachelor's degree from John Jay College of Criminal Justice, she stands apart as one of the finest examples of what the Nassau Police Service includes.[1]

Plaintiff's Rule 56.1 Statement and Complaint provide a more detailed statement of the underlying facts than is allowed by the page limit set for this letter.

On Friday, November 29, 2013,[2] the defendants arrested and falsely accused Ms. Sharpe with one charge only, Resisting Arrest. Before her arrest, Ms. Sharpe, after a full day of work in the Applicant Investigation Unit, went shopping for weather stripping. She was clearly off-duty. She eventually went to the Dollar Tree store in West Hempstead. While parking her car before entering the store, she was confronted by another member of the NCPD, defendant Charles Volpe, who exhibited an uncontrolled level of aggression and abusive language. As Plaintiff was attempting to park, Volpe confronted her, told her to role down her car window and said that she was obstructing his view of his investigation. She

---

[1]  A copy of Ms. Sharpe's compressed resume at the time of her arrest is attached as **Exhibit H**.

[2]  Some of the Police paperwork incorrectly list the date of November 28, 2013.

informed him that she was not trying to obstruct the investigation and that she was only trying to park. Following the brief conversation, the cars moved positions. Ms. Sharpe parked and walked toward the entrance door of the Dollar Tree. Volpe circled around from where his car had been to intercept Plaintiff as she walked to the store and very roughly yelled "Yo, yo, you." Plaintiff turned to see who was saying those words and to whom they were being addressed. She saw Volpe in his patrol car who yelled "come over here." Ms. Sharpe walked to his open car window. Volpe then berated her, saying that she needs to pull over the next time she sees a police car. Taken aback, Ms. Sharpe displayed her shield and identification, verbally identified herself as a police officer, and offered to assist officer Volpe with whatever he was investigating. His response was vulgar, verbally abusive and physically threatening. He stated, "he did not care who the fuck I was or what the fuck I did." Shocked by this abuse, Ms. Sharpe responded, "if that is the way that you treat a member of service, then fuck you" and turned to go into the store. As she was about to enter the store, Volpe made his view and disrespect for Plaintiff clear. He shouted, "that is why you get no respect, you fucking moron." Plaintiff entered the store without turning around or responding.

After being in the store a short while, Plaintiff emerged, walked to her car and proceeded to exit the parking lot. Upon exiting, she noticed police lights and pulled her car over to the shoulder of the road she was on. In the RMPs were Volpe and Officer Victor Gladitz, who Volpe had convinced to return with him to the Dollar Tree parking lot to harass Plaintiff. Once stopped, Plaintiff emerged from her car and demanded to know why she was being pulled over. Plaintiff was physically pushed against her car by Gladitz. Thereafter, Ms. Sharpe was subjected to a barrage of curses, threats, slights, gender-based insults and other actions intended to demean and victimize her. Plaintiff provided her identification which Volpe snatched so hard from her hand that it snapped the chain to which is was attached. Ms. Sharpe was manhandled by Gladitz, who grabbed and held her forearms and then forcefully pulled her hands from her pockets. While Gladitz claimed that Ms. Sharpe attempted to hit him with the chain that Volpe had just snapped minutes prior, which serves as the basis for Resisting Arrest, Ms. Sharpe adamantly denies that she did so. This is an issue for the jury. *Jocks v. Tavernier*, 316 F.3d 128, 136 (2d Cir. 2003).

Plaintiff requested for a supervisor to be called, and one was not called as requested. Further, this planned encounter by Gladitz and Volpe, which they now call a "traffic stop," was never disclosed to a supervisor, the radio dispatch of the NCPD, or any superior officer until after Plaintiff was handcuffed and placed under arrest. The defendants failed to disclose in their paper work the improper and violative interaction they had with Ms. Sharpe before their wrongful and contrived "traffic stop." Plaintiff was not only handcuffed but called names intended to lessen her as a Black woman and rob her of her decades of service to NCPD and the United States. If Defendants claim they did not know Plaintiff before hand, their references, words and actions toward this African-American woman are even more damning. Being referred to as "that is why **you** get no fucking respect", a "fucking moron"[3],

---

[3]

The term "moron" is attributed to psychologist and eugenicist Henry H. Goddard, who used it to describe "feeble-minded" individuals. It is closely tied to the United States's involvement in eugenics, a scientific term, meaning "well-born," that describes the belief that the human population can be controlled by breeding to increase the occurrence of desirable heritable characteristics. It focuses on eliminating "undesirable" individuals, singling out unmarried mothers, people of color, the poor, and those with disabilities. Labeled as morons, Southern black women were sterilized *en masse*, often without consent, for much of the 20th century. It was a practice so common that it received a nickname: a "Mississippi appendectomy." The sterilization of Native Americans occurred as late as the 1980s. In some parts of the

"fucking bitch" and "sweetheart" cannot be mistaken as innocent terms or terms of endearment. Neither will the fact that these terms and statements were uttered be lost on the Jury. This is especially true as to the tone and manner of speech utilized by Gladitz and Volpe as they continued to abuse, prod and poke at Plaintiff. Further, Volpe testifies to the fact that current Commissioner Ryder called Ms. Sharpe "a fucking nigger" and that "he couldn't believe [Volpe] blew the [criminal] case [against Ms. Sharpe]." (Volpe Dep. 226:4- 7) By any measure this is of grave concern. The fact that Volpe stated Ryder used the racial slur against Ms. Sharpe after the Ms. Sharpe's criminal trial ended, and that Volpe did not report the racial slur made by Ryder in fear of retribution and retaliation by Nassau County Police Department is a serious indictment on both Volpe and Defendant Nassau County. (Volpe Dep. 230-232).

As noted, the charge of Resisting Arrest rests upon the allegations that Officer Sharpe tried to strike Gladitz with the chain Volpe had snapped moments before. Plaintiff has repeatedly denied this. A rational jury can find this was an attempt by Gladitz and Volpe to coverup their own wrongful and discriminatory acts. And the defendants' meeting at the firehouse, failure to advise superiors and then their agreement to target Officer Sharpe demonstrated their motive and intent to treat her with a level of abuse of official authority that raises serious questions of fact. Their treatment of Ms. Sharpe with complete disdain and ongoing verbal abuse of Officer Sharpe was a clear exhibition of gender and racial bias that was evident from Officer Volpe's opening barrage of curses and insults. These defendants abused, manhandled, falsely accused, falsely arrested and mistreated Ms. Sharpe.

As noted, no other charges were leveled against Ms. Sharpe on the date of her arrest. Forty days later, on January 9, 2014, a superseding accusatory instrument alleged that Ms. Sharpe resisted arrest on November 29, 2013, at 188 Hempstead Turnpike, and added the charges of Harassment and Tinted Windows. The Harassment allegedly occurred at at 188 Hempstead Turnpike and the Tinted Windows at Mayfair Avenue. Each of these charges were fabricated and designed to mask the wrongful actions of Volpe and Gladitz. Well into the prosecution of Ms. Sharpe it was first disclosed that there was cell phone video and audio of some of the interactions of the Defendants with Ms. Sharpe. Those are provided electronically only as Exhibit L collectively (*Labeled Video 1 and Video 2*). An unofficial transcript of the audio recording of part of the interaction between Ms. Sharpe and the Defendants was produced during the criminal trial as an aid to the jury. (See Exhibit D) Also, the video from the Dollar Tree store taken on the day of Ms. Sharpe's arrest is provided electronically as Exhibit **M.**

The jury must determine whether probable cause existed for Ms. Sharpe's arrest and prosecution, and whether the defendants fabricated evidence. The after the fact charge of tinted windows was dismissed by motions pre-trial. Ms. Sharpe has denied that there was anything unlawful about the tint of her windows, the defendants never mentioned to Ms. Sharpe the tint of her windows or that she had committed any traffic violation on the day of her arrest, and Volpe and Gladitz deny having tested the tint of the windows or having any actual training on determining when windows which are tinted are a violation. Regarding the charges of Resisting Arrest and Harassment, Ms. Sharpe, as noted, denied

---

south this gave rise to a phenomenon known as the 'Mississippi Appendectomy' in the 1920s-1980s. With the passage of the Immigration Act of 1924, eugenicists for the first time played an important role in the Congressional debate as expert advisers on the threat of "inferior stock" from eastern and southern Europe. The new act, inspired by the eugenic belief in the racial superiority of "old stock" white Americans as members of the "Nordic race" (a form of white supremacy), strengthened the position of existing laws prohibiting race-mixing. *Watson, James D.; Berry, Andrew (2003). DNA: The Secret of Life. Alfred A. Knopf. pp. 29–31. ISBN 978-0-375-41546-3; Paul; "Eugenics Laws Restricting Immigration," Archived 4 March 2016 at the Wayback Machine, Eugenics Archive*

swinging the chain at Gladitz.

Not only was Ms. Sharpe falsely accused, prosecuted and made to stand trial, she was also ostracized for having the audacity to point out the overt racism and sexism that underscored her mistreatment by Volpe and Gladitz. The same level of disrespect was adopted by Nassau County and the Commissioner of Police, defendant Thomas V. Dale, who fostered and approved the arrest and prosecution of a member of their own service whom they had every indication had done nothing wrong. In an effort to mitigate this very occurrence, on December 2, 2013 Ms. Sharpe, through her attorneys, hand delivered to the Department, Dale and County Executive Edward Mangano a letter of complaint about her treatment and against the above referenced police officers.(See File Copy of Exhibit I). No response was forthcoming. To the contrary, they not only allowed the prosecution of Ms. Sharpe to take place and failed to respond even after the acquittal (See Exhibit A and J), but saw to it that Plaintiff was charged departmentally and found guilty within the Department of engaging in acts unbecoming an officer **while she was off-duty**. The bogus charge was allegedly because she used a curse word in response to being cursed at by Volpe and Gladitz **while they were on duty**. The import of this contrivance will not be lost on a jury.

**Defendant Dale and Nassau County**

The attitude and refusal of Nassau County to take claims of discrimination and official misconduct of its officers is supported by this record. The Complaint alleges that "The COUNTY has failed to respond to the continuing and urgent need to prevent, restrain. and discipline police officers who wrongfully, violate Constitutional rights of citizens, use excessive force, and abuse African American and female civilians, and the COUNTY has failed to find that civilian complaints made against police officers are founded or valid in anyway; therefore the COUNTY is liable under 42 U.S.C. § 1983 because the COUNTY has had actual and/or constructive knowledge of the patterns of abuse and excessive force against minorities by its police officers, employees. and/or agents in violation of the United State Constitution, and because of the COUNTY, DEPARTMENT, VOLPE, GLADITZ and DALE's un-meaningful policy and custom for reviewing complaints of misconduct, the Defendant Officers relied upon that flawed policy to continue their patterns of abuse, excessive force, unlawful search and seizure of personal property and discriminatory legal enforcement, all in violation of the Plaintiffs rights."

The County and Dale not only refused to investigate, engage in evaluation of and consider that its own officers engage in unlawful acts of abuse of authority, abuse of process and discrimination as alleged in the Complaint, but when a letter from Ms. Sharpe's lawyer was sent to Dale on December 2, 2013 (Exhibit I ), he ignored it. The sections referenced in the Plaintiff's 56.1 Counter Statement taken from Dale's deposition (Exhibit G), support that summary judgment is inappropriate. As demonstrated by these excerpts, Ms. Sharpe's 42 U.S.C. § 1983 claims are well supported.[4] The culture of ignoring and refusing even to consider relevant information and evidence that there may be discrimination and wrongful actions by officers is also found in the record. While the County Defendants allege there is "no evidence that Plaintiff was treated differently because of her race or gender" they actually fail to address the proper question, which is whether Ms. Sharpe's race and/or gender factored in her treatment? Based

---

[4] Plaintiff recognizes that her claims of race discrimination cannot be brought pursuant to 42 U.S.C. § 1981. *Duplan v. City of New York*, 888 F.3d 612, 619-21 (2d Cir. 2018).

on the comments, attitude and language used by Defendants, this a question for the jury.

Defendants seem to again miss the point that it was Ms. Sharpe's speech on November 29, 2013 when she refused to be disrespected and how she responded to Defendant Volpe's abuse that began the violation of her free speech. In her Complaint, Plaintiff made her initial protected speech clear at paragraphs 28- 31. Defendants' reliance on *Monz v. Rocky Point Fire Dept*. is misplaced. Ms. Sharpe was off duty and not on the job, and outside the scope of her duties as an officer. In fact, even though Ms. Sharpe was largely repeating and responding to Galditz and Volpe as they cursed at her, Dale makes it clear that there was nothing wrong with Ms. Sharpe cursing while she was off duty.(See Exhibit G page 97)

Defendant Volpe makes clear that while he did not remember what Plaintiff said or how she spoke to him, he did not like her speech and it pissed him off. (Hearing Transcript at pp. 60-61.) The statements made by Defendants during recorded conversation are telling as to the treatment of Plaintiff and the objection to Plaintiff's speech. References to "the attitude you give me"; "I wouldn't be disrespecting the officers that are speaking to you, somewhere along the line– "; "I guess you don't need a job"; "We treat others the way we been treated"; You fucking swung a chain at my face you bitch"; "Cursing at us, you're a Nassau cop, you should be ashamed of yourself"; "You are a sorry– you're a sorry excuse for a cop, you don't talk to people like this"; and "Too many for you, sweetheart" all point to animus against Plaintiff and actions taken against her due to speech and her gender. These, along with the differing stories provided by Gladitz and Volpe support that the ulterior motive, objective and treatment of Plaintiff was not for any lawful purpose. Further, Plaintiff's right to not be abused verbally and to speak opposing that treatment is unquestionably protected speech. Her speech when pulled over, her speech to the press after she was arrested and to the press following her trial all are protected, "[a]fter considering the content, form and context of the letter and press conference, we hold that both constitute protectable speech, addressing matters of public concern." *Cioffi v. Averill Park Central School Dist. Bd. of Ed.*, 444 F.3d 158 (2d Cir. 2006).

Any basis for the stop and arrest of Plaintiff was fabricated. The testimony of Plaintiff and Defendants' testimony support that there was no probable cause for her stop, arrest and prosecution. All charges lodged against Plaintiff were dismissed, which is strong proof that probable cause did not exist for an arrest. *Morel v. Reed*, 2015 WL 3755976, at *2 (EDNY June 16, 2015) (An acquittal is admissible as evidence to refute probable cause for the arrest.); *Thompson v. City of New York*, 50 Misc 3d 1037, 1042 (Bronx Sup Ct 2015) ("subsequent dismissal, acquittal or reversal on appeal is proof tending to establish the absence of probable cause at the time of the arrest."). The defense of probable cause is also not available where, like here, Plaintiff claims that the arresting officer fabricated evidence in order to secure probable cause. *Morse v. Spitzer*, 2012 WL 3202963, at *7 (EDNY Aug. 3, 2012) ("when an officer fabricates probable cause to prosecute, it cannot be said that the officer had an objectively reasonable belief that probable cause existed."); *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991) Since probable cause is an affirmative defense to a false arrest claim, Defendants bear the burden of proof. *Mitchell v. City of New York*, 841 F3d 72, 77 (2d Cir. 2016).

**Officers Gladitz and Volpe**

In addition to the racial and sexist animus demonstrated by the police, Ms. Sharpe was subjected to false arrest, malicious prosecution, abuse of process, excessive force and battery. A police officer

5

commits a battery when he touches the plaintiff during an unlawful arrest.  *See, Johnson v. Suffolk County Police Dep't*, 245 A.D.2d 340, 665 N.Y.S.2d 440 (2d Dep't 1997).  There is no denial by the Officers in their testimony from the criminal trial, and as can be heard on the audio tape, these officers manhandled and used unreasonable and unnecessary force so they could have their way with Ms. Sharpe and did so with a great amount of force.  *Robinson v. Via*, 821 F.2d 913, 923-24 (2d Cir. 1987).

Defendants cannot credibly claim that the rights implicated in this case were not clearly established.  *Gonzalez v. City of Schenectady*, 728 F3d 149, 157 (2d Cir. 2013) ("The right to be free from arrest without probable cause was clearly established ..."); *Jackson v. Tellado*, 236 F. Supp.3d 636, 667 (EDNY 2017) (It is clearly established that use of gratuitous force against a citizen who is not resisting an arrest violates the constitution.). Defendants claim that they are entitled to qualified immunity because their conduct was objectively reasonable. Courts routinely deny qualified immunity to Defendants where the reasonableness of the Defendant's actions is the subject of material factual disputes by the parties. *Wong v. Yoo*, 649 F.Supp.2d 34, 58 (EDNY 2009) ("When there are facts in dispute that are material to a determination of reasonableness, dismissal on the basis of a qualified immunity defense is inappropriate."); *Carrillos v. Inc. Vil. of Hempstead*, 87 F. Supp.3d 357, 374 (EDNY 2015) (similarly denying summary judgment on qualified immunity and malicious prosecution claim where the existence of probable cause was genuinely in dispute.) "Qualified immunity is an affirmative defense that must be pled and proved by the defendant." *Shechter v. Comptroller of the City of N.Y.*, 79 F.3d 265, 270 (2d Cir. 1996) *(citing Blissett v. Coughlin*, 66 F.3d 531, 538 (2d Cir. 1995)) As the record demonstrates, "the facts do not support a finding, as a matter of law, that [the Individual] Defendants' actions were 'objectively reasonable' with respect to Plaintiff's . . . claims." *Szabo v. Parascandolo*, No. 16-CV-3683, 2019 WL 481925, at *7 (E.D.N.Y. Feb. 6, 2019).

Neither Gladitz nor Volpe attempted to prevent the abuse to which Plaintiff was being subjected. The evidence clearly establishes material questions of fact as to the individual defendants' liability on plaintiff's failure to intervene claim, precluding summary judgment. "A law enforcement officer has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers." *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988) (collecting cases). Liability attaches if "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." *Jean-Laurent v. Wilkinson*, 540 F.Supp. 2d 501, 512 (S.D.N.Y.2008) *(citing O'Neill*, 839 F.2d at 11-12).

We thank the Court for its kind consideration and ask that the Defendants request to file a Summary Judgement Motion be denied.

Respectfully submitted,

FREDERICK K. BREWINGTON

cc:   Matthew Mehnert, Esq. (via ecf)
       James Murphy, Esq. (via ecf)
       Steven Stern, Esq. (via ecf)
FKB:pl