UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DOLORES SHARPE,

                  Plaintiff,

        -against-

COUNTY OF NASSAU, NASSAU COUNTY
POLICE DEPARTMENT, CHARLES VOLPE, in
his individual and official capacities, VICTOR
GLADITZ, in his individual and official capacities
and former Police Commissioner THOMAS DALE,
in his individual and official capacities,

                Defendants.

------------------------------------------------------------X

CV-15-6446 (GRB)(AYS)

**DEFENDANTS' RESPONSE TO
PLAINTIFF'S COUNTER-
STATEMENT OF MATERIAL
FACTS IN DISPUTE**

       Defendants, County of Nassau, Nassau County Police Department, Charles Volpe, Victor

Gladitz and Thomas Dale (collectively, "Defendants"), by their respective attorneys, hereby

submit the following response to Plaintiff's counter-statement of material facts alleged to be in

dispute:

**The Undisputed Facts from Defendant Dale**

    139.    Commissioner Dale testified that "I don't see any major problem using curse words if

you're off duty." (Dale Dep. 97).

**Response** – Admit.

    140.    No one ever told Commissioner Dale that an offer to talk about what had happened to

Plaintiff and her complaint made to the Department had been extend transmitted in a letter to

him, and he believes he should have been told. (Dale Dep. 84-85).

**Response** – Deny, except admit that then Commissioner Dale, who retired on December 11,

2013, did not recall receiving a December 2, 2013 letter from Plaintiff's counsel, Frederick

Brewington, Esq., in which he requested to sit down with the Commissioner to discuss Plaintiff's allegations. *See* Dale Dep. at pp. 30, 84-85.

141.    There was never any consideration given to the possibility that the officers had attempted to cover up their own wrongful actions by bringing charges against Plaintiff. (Dale Dep. 82).

**Response** – Deny, except admit that then Commissioner Dale was not aware of any effort by Officers Volpe and Gladitz to engage in a cover up of allegedly wrongful actions. *See* Dale Dep. at p. 82.

142.    No one ever told him that the had been a statement that Ms. Sharpe had been abused and/or disrespected as an African-American woman. (Dale Dep. 85-86).

**Response** – Deny, except admit that then Commissioner Dale was unaware of any allegation that Ms. Sharpe was abused or disrespected as an African-American woman. *See* Dale Dep. at pp. 85-86.

143.    Defendant Dale agrees that any allegation of racial bias by his officers is something that should be looked into very carefully. (Dale Dep. 82-83).

**Response** – Admit.

144.    Defendant Dale has no memory of anyone telling him that Ms. Sharpe complained that she was subjected to racial bias by Officer Volpe's barrage of curses and insults. (Dale Dep. 83).

**Response** – Admit that then Commissioner Dale was unaware of the allegations in Mr. Brewington's December 2, 2013 letter. *See* Dale Dep. at p. 83.

145.    Commissioner Dale testified that he that did not know there was an audio tape of insults and curses wrongfully said to Ms. Sharpe. (Dale Dep. 98).

**Response** – Deny. Former Commissioner Dale testified only that he was unaware of the existence of an audio tape of the subject incident. *See* Dale Dep. at p. 98.

146.    Commissioner Dale had notice of Defendants Volpe and Gladitz violating Ms. Sharpe's civil rights by a hand delivered December 2, 2013 letter yet failed to act on such. (*See* Letter to Thomas V. Dale dated December 2, 2013; Dale Dep. 82-86).

**Response** – Deny. Former Commissioner Dale stated that he did not recall ever seeing the allegedly hand delivered letter. *See* Dale Dep. at p. 64.

**The Undisputed Facts from Defendant Gladitz**

147.    Initially officer Gladitz had a face to face conversation with office Volpe in which officer Volpe explained his interaction with Ms. Sharpe. (Gladitz Dep. 34-35).

**Response** -  Admit.

148.    Gladitz stated that the conversation with Volpe about Ms. Sharpe took place in their respective RMPs near a firehouse. (Gladitz Dep. 35-36).

**Response** – Admit.

149.    Gladitz stated that he was already going to meet Volpe in order to reprint an accident report they had done prior to this subject incident. (Gladitz Dep. 37:8-25).

**Response** – Admit.

150.    Gladitz stated that Volpe needed his help reprinting the auto accident form and that was their purpose for meeting. (Gladitz Dep. 38:2-21).

**Response** – Admit.

151.    Prior to meeting Volpe at the firehouse, Gladitz had no conversation about Ms. Sharpe with Volpe. (Gladitz Dep. 38-39).

**Response** – Admit.

152.    Gladitz stated that Volpe told him about an auto accident and that Ms. Sharpe said she was a police officer. (Gladitz Dep. 39-40).

**<u>Response</u>** – Admit.

153.    Gladitz and Volpe proceeded to where Volpe said the accident took place and/or where Ms. Sharpe was parked. (Gladitz Dep. 40:16-22).

**<u>Response</u>** – Admit, except delete "/or". *See* Gladitz Dep. at p. 40.

154.    Gladitz drove his vehicle into the Dollar Tree parking lot. (Gladitz Dep. 41).

**<u>Response</u>** – Admit.

155.    Gladitz claimed he then exited the parking lot when he saw Volpe was in a "car stop situation" with Ms. Sharpe. (Gladitz Dep. 42-44).

**<u>Response</u>** – Denied, except admit that Officer Gladitz exited the parking lot, then saw that Officer Volpe was in a "car stop situation" with Plaintiff. *See* Gladitz Dep. at pp. 42-44.

156.    Gladitz then parked his RMP directly behind Volpe's RMP and exited his vehicle. (Gladitz Dep. 46-47).

**<u>Response</u>** – Admit.

157.    When Defendant Gladitz first approached Ms. Sharpe, he told her to calm down and relax. (Gladitz Dep. 47:4-5).

**<u>Response</u>** – Denied, except admit that when Officer Gladitz approached Plaintiff, she was cursing and yelling at him and he did say to her "is this about tinted windows, relax, calm down." He kept asking Plaintiff what this was about and asked her to go back toward her car. She yelled at him multiple times, telling him that he can't tell her what to do, that he's too young to be telling her what to do. Plaintiff was very upset and Officer Gladitz tried his best to calm her down. *See* Gladitz Dep. at p. 47.

158.     Defendant Gladitz said Ms. Sharpe was stopped for many reasons including tinted windows on her vehicle and "she had stated she was a police officer." (Gladitz Dep. 48:3-16).

**Response** – Admit.

159.     Defendant Gladitz stated that he and Defendant Volpe investigated Ms. Sharpe without telling anyone at headquarters nor advising anyone on the police radio or dispatch that a stop had taken place. (Gladitz Dep. 49-50).

**Response** – Admit the Officers did not initially notify headquarters, but deny to the extent that Officer Gladitz and Officer Volpe did notify dispatch at some point after the vehicle stop. *See* Volpe Dep. at p. 84.

160.     Defendant Gladitz stated that Defendant Volpe physically grabbed Ms. Sharpe's ID from her. (Gladitz Dep. 57:19-24, 61:4-18).

**Response** – Admit.

161.     When officer Volpe grabbed Ms. Sharpe's identification, he caused Ms. Sharpe's chain to break. (Gladitz Dep. 57:19-24).

**Response** – Denied, except admit that, when Officer Volpe grabbed Plaintiff's identification, she pulled it back, which caused the chain to break. *See* Gladitz Dep. at p. 57.

162.     Defendant Gladitz commanded Ms. Sharpe to remove her hands out of her pocket and after such command, physically placed his hands on her forearms to keep her hands in her pocket. (Gladitz Dep. 65:17-19, 68:10-13; Sharpe Dep. 62-64).

**Response** – Denied, except admit that Officer Gladitz asked Plaintiff to remove her hands from her pockets multiple times and she told him to "go fuck himself" multiple times. Officer Gladitz told Plaintiff that she didn't need to do this, that there was no reason to escalate this and asked her to please take her hands out of her pockets and she told him to "go fuck himself" again. He

then placed his hands on her forearms and was holding her hands there. Plaintiff got very angry about that and said "Get the fuck off me and pulled her hands extremely fast out of pockets and swung at him". *See* Gladitz Dep. at pp. 65-66.

163.   Defendant Gladitz subsequently said "Oh fuck" and began to handcuff Ms. Sharpe. (Gladitz Dep. 71:9-17).

**Response** – Denied, except admit that after Plaintiff swung the chain she had in her hand at Officer Gladitz, he took his handcuffs out right away and turned her around and tried to place her into handcuffs and into custody. Officer Gladitz was very upset and might have cursed and thinks he may have said "Oh, fuck." He told Plaintiff to stop resisting while he was trying to put the handcuffs on her. *See* Gladitz Dep. at pp. 70-71.

164.   Defendant Volpe helped Gladitz handcuff Ms. Sharpe. (Gladitz Dep. 73:9-21).

**Response** – Admit.

165.   Defendant Gladitz disrespectfully told Ms. Sharpe: "You swung the fucking chain at my face you bitch." (Gladitz Dep 80:4-14; Audio Tape and Audio Tape Transcript pg. 2).

**Response** – Defendants Object to the use of and reliance upon the Audio Tape Transcript, which is not admissible evidence. The allegations are, nonetheless, denied, except admit that Officer Gladitz said "You swung a chain at my face you bitch." It was Plaintiff who said "I didn't swing it at your fucking face." *See* Audio tape of the encounter recorded by Volpe.

166.   Gladitz supported the prosecution of the criminal charges made Ms. Sharpe. (Gladitz Dep. 89-91, 93).

**Response** – Denied as to the characterization. Officer Gladitz did his job and did, to the best of his ability, tell what happened the day of Plaintiff's arrest. *See* Gladitz Dep. at pp. 89-91.

167.    Gladitz supported the prosecution of the criminal charges made Ms. Sharpe. (Gladitz Dep. 89-91).

**Response** – Denied as to the characterization. Officer Gladitz did his job and did, to the best of his ability, tell what happened the day of Plaintiff's arrest. *See* Gladitz Dep. at pp. 89-91.

168.    Such support included testifying on behalf of the prosecution against Ms. Sharpe. (Gladitz Dep. 99:8-20).

**Response** – Denied, except admit that Officer Gladitz was called as a witness for the prosecution and testified as to what happened the day of Plaintiff's arrest. *See* Gladitz Dep. at pp. 90-91.

169.    Ms. Sharpe was acquitted of all criminal charges. (Gladitz Dep. 88:5-11).

**Response** – Admit.

170.    Gladitz does not know if Volpe witnessed Ms. Sharpe allegedly swinging the chain at Gladitz. (Gladitz Dep. 108:6-23).

**Response** – Denied, except admit that Plaintiff swung the chain at Officer Gladitz and he assumes that Officer Volpe witnessed Plaintiff swinging the metal chain at his face since Officer Volpe ran up to help him. However, only Officer Volpe can testify as to what he actually witnessed. *See* Gladitz Dep. at p. 108.

171.    Gladitz was charged with a violation of department rules due to his wrongful actions against Ms. Sharpe. (Gladitz Dep. 132:21-24).

**Response** – Defendants object to this assertion as it relates to the characterization of what Officer Gladitz was charged with or why. Regardless, admit that Officer Gladitz was charged by the Department with a violation of departmental rules. *See* Gladitz Dep. at p. 132.

172.    Gladitz was charged with violating department rules because he called Ms. Shape a "bitch," used other obscenities and made a comment that they "were frozen" during the wrongful encounter. (Gladitz Dep. 133-134; Audio Tape Transcript pg. 2).

**Response** – Defendants object to this assertion as it relates to the characterization of what Officer Gladitz was charged with or why. Regardless, denied, inasmuch as Officer Gladitz was charged by the Department with a violation of departmental rules for calling Sharpe a bitch and making a comment that they were frozen. *See* Gladitz Dep. at pp. 132-33.

173.    Gladitz used obscenities, called Ms. Shape a "bitch," and used condescending language towards Ms. Sharpe after putting her in handcuffs. (Gladitz Dep. 146:14-23; Audio Tape Transcript pg. 2).

**Response** - Defendants Object to the use of and reliance upon the Audio Tape Transcript, which is not admissible evidence. The allegations are, nonetheless, denied. Officer Gladitz did call Sharpe a bitch after she swung a chain at his face and while she was resisting efforts to handcuff her. *See* Audio tape of encounter recorded by Volpe.

174.    As a result of his violations, the department sent Defendant Gladitz for retraining. (Gladitz Dep. 135:22-24).

**Response** – Denied, except admit that as a result of Officer Gladitz's departmental violation, the Department recommended retraining as far as the language that he had used. *See* Gladitz Dep. at p. 134.

175.    Gladitz did not lose any vacation days or personal days, nor was he sanctioned in any financially impactful way as a result of his wrongful actions and departmental violations. (Gladitz Dep. 135:11-17).

**Response** - Denied, except admit that Officer Gladitz did not lose any vacation days or personal days, nor was he sanctioned financially when he was retrained. *See* Gladitz Dep. at p. 135.

176.    A civilian complaint was lodged against Defendant Gladitz because the testimony he offered during Ms. Sharpe's criminal trial was inconsistent with the harassment that Ms. Sharpe actually experienced. (Gladitz Dep. 137:18-138:6).

**Response** – Objection. The testimony Officer Gladitz offered during Plainbtiff's criminal trial was consistent with the events that occurred the day she was arrested. Plaintiff's Civilian Complaint lodged against Officer Gladitz is inadmissible, self-serving and inaccurate. *See* Gladitz Dep. at p. 90.

177.    There was a finding that officers Volpe, Sharpe and Gladitz "engaged in conduct unbecoming an officer when they used obscenities and condescending language toward each other and made unprofessional comments on the evening of November 29, 2013." (Gladitz Dep. 145:6-19).

**Response** – Admit.

178.    Defendant Gladitz said he did not call Ms. Sharpe sweetheart and the he thinks Defendant Volpe did. (Gladitz Dep. 149:12-150:3).

**Response** – Debied. Officer Gladitz never called Plaintiff sweetheart and there was never any allegation that he did. *See* Gladitz Dep. at p. 149.

179.    Defendant Gladitz has multiple civilian complaints against him, which include but are not limited to using vulgarities, and yelling at and/or intimidating his in law's neighbor Lori Hanson. (Gladitz Dep. 158-60, 169-70).

**Response** – Denied. There are no allegations that Officer Gladitz ever used vulgarities or was intimidating his in-law's neighbor, nor did Officer Gladitz use vulgarities against Sebastian Clerge. *See* Gladitz Dep. at pp. 158-61.

**The Undisputed Facts from Defendant Volpe**

180.     Defendant Volpe currently has an open civil suit against Nassau County. (Volpe Dep. 13:17-25, 14:2).

**Response** – Admit.

181.     Defendant Volpe stated that after he told Ms. Sharpe to roll her window down they got into an argument. This was the first interaction between Ms. Sharpe and Volpe. (Volpe Dep. 27:13-25).

**Response** - Admit. Officer Volpe and Plaintiff got into an argument because she refused to move her private vehicle, insisting instead that he should move his police car. *See* Volpe Dep. at p. 27.

182.     Ms. Sharpe informed Volpe that she was a cop, like himself. (Volpe Dep. 28:10-12).

**Response** - Admit that Plaintiff said she was a "cop," but deny she said "like himself." *See* Volpe Dep. at p. 28.

183.     During his deposition, officer Volpe described Ms. Sharpe as "belligerent." (*Id.*).

**Response** – Admit that Plaintiff was belligerent during the subject interactions. *See* Volpe Dep. at p. 28.

184.     Defendant Volpe does not recall exactly what Plaintiff said when she came to the window of his car or how she said it. (*People v. Sharpe* Hearing dated July 10, 2014, pp. 60).

**Response** – Admit that Officer Volpe does not recall exactly what Plaintiff said, but he does recall generally what she said and how she spoke to him. Specifically, she responded to him in a

belligerent manner, cursing, telling Officer Volpe she was a cop and that he would not be giving her a ticket. *See* Volpe 7/10/14 Hearing Testimony at p. 60; Volpe Dep. at p. 28.

185. Defendant Volpe did not like Plaintiff's speech. (*People v. Sharpe* Hearing dated July 10, 2014, pp. 60).

**<u>Response</u>** – Deny to the extent that the question takes "speech" out of context. The referenced "speech" was when Plaintiff informed Officer Volpe that she would not move her private vehicle, insisted instead in a belligerent manner that he should move his police car, while cursing and telling Officer Volpe she was a cop and that he would not be giving her a ticket. *See* Volpe Dep. at pp. 27-28.

186. Plaintiff's speech got Defendant Volpe upset. (*People v. Sharpe* Hearing dated July 10, 2014, pp. 61).

**<u>Response</u>** – Deny to the extent that the question takes "speech" out of context. The referenced "speech" was when Plaintiff refused to move her private vehicle, insisting instead that Officer Volpe should move his police car, responded in a belligerent manner, cursing, telling Officer Volpe she was a cop and that he would not be giving her a ticket. *See* Volpe Dep. at pp. 27-28.

187. Defendant Volpe does not recall whether he was going to give Ms. Sharpe a ticket or not for tinted windows. (Volpe Dep. 32:12-16).

**<u>Response</u>** – Deny. Officer Volpe was only asked whether he remembered if he intended to write her a ticket, but did not specify what the ticket would have been for. *See* Volpe Dep. at p. 32.

188. Defendant Volpe, through his personal cell phone or the police system in his car, then contacted officer Gladitz and summarized his interactions with Ms. Sharpe. (Volpe Dep. 39:25-40:4).

**Response** – Admit that Officer Volpe contacted Officer Gladitz through his cell phone or police system in his car and relayed a brief description of the events that had transpired to sum up the exchange he had with Plaintiff. *See* Volpe Dep. at pp. 38-39.

189.    After a second interaction with Ms. Sharpe, Defendant Volpe drove "towards the relieving point of 507's post, which is where Officer Gladitz was." (Volpe Dep. 37:17-24).

**Response** – Admit.

190.    After meeting Gladitz at the firehouse, Volpe stated that there was a decision made by one or both them to go back where the interactions with Ms. Sharpe occurred. (Volpe Dep. 43).

**Response** – Deny. After meeting Officer Gladitz at the firehouse, Officer Volpe stated that there was a decision made by either him or Officer Gladitz to go back to the Dollar Tree. *See* Volpe Dep. at p. 43.

191.    Volpe never wrote in his memo book that he met with Gladitz at the firehouse although he did write about the criminal mischief and alleged VTL violation. (Volpe Dep. 151).

**Response** – Deny to the extent that the criminal mischief matter had nothing to do with Plaintiff, but was an entry in Officer Volpe's memo book about a prior investigation. *See* Volpe Dep. at p. 149.

192.    Volpe stated that he wanted to show Gladitz where the interaction occurred. (Volpe Dep. 43).

**Response** – Admit.

193.    However, Volpe stated that he went back to the Dollar Tree "probably looking for [Ms. Sharpe]." (Volpe Dep. 44:25-45:7).

**Response** – Denied to the extent Volpe said, "I was probably looking for her, but I also wanted to show [Gladitz] where it had happened while I explained to him what had happened." *See* Volpe Dep. at pp. 44-45.

194.    Volpe never went in the parking lot where the initial interactions with Ms. Sharpe occurred. (Volpe Dep. 46).

**Response** – Deny. Officer Volpe entered the parking lot. *See* Volpe Dep. at pp. 51, 53-54.

195.    When Volpe saw Ms. Sharpe come out of the parking lot, he told Gladitz that he was going to again gather information to prove that Ms. Sharpe was an officer. This would be the third interaction. (Volpe Dep. 50:4-12).

**Response** – Deny. When Officer Volpe saw Plaintiff come out of the store, not the parking lot, he told Officer Gladitz that was the individual with whom he had previously interacted. He said he was going to go back into the parking lot to gather identification from her to prove that she was a police officer. He did not say he was going to "again" gather information, as he did not yet have this information. *See* Volpe Dep. at p. 50.

196.    Only discussing these decisions with Gladitz, Volpe never contacted headquarters or a supervisor up until this point. (Volpe Dep. 50-51).

**Response** – Admit.

197.    Rather than following his training, Volpe stopped Ms. Sharpe without notifying anyone in his command. (Volpe Dep. 60-61, 76-77).

**Response** – Deny. Officer Volpe's training was to notify his command at some point *after* making a traffic stop. *See* Volpe Dep. at p. 60.

198.    Volpe grabbed Ms. Sharpe's ID from her. (Volpe Dep. 76:12-14).

**Response** – Denied inasmuch as the referenced cite does not support this assertion.

199.     Volpe stated that he and Gladitz was putting handcuffs on Ms. Sharpe to place her in custody. (Volpe Dep. 83).

**Response** – Admit.

200.     After placing Ms. Sharpe in "custody," Defendants Volpe and Gladitz finally called a supervisor. (Volpe Dep. 84:20-25).

**Response** – Deny the implication of "finally," but admit that, after Plaintiff was placed in handcuffs, the Officers called a supervisor. *See*Volpe Dep. at p. 84.

201.     Defendant Volpe would then wrongfully call Ms. Sharpe "sweetheart" because she was a woman. (Volpe Dep. 87:21-23, 88:18-20, 163; Audio Tape and Audio Tape Transcript pg. 3).

**Response** – Deny. Officer Volpe used the word "sweetheart" in response to Plaintiff's attempts to disparage his experience as a police officer. *See* Audio Recording.

202.     Volpe was the charging officer in multiple criminal charges against Ms. Sharpe as a result of Defendants wrongful stop. (Volpe Dep. 98:3-6).

**Response** – Denied to the extent that the stop was proper and lawful, and the cited testimony does not suggest otherwise. In addition, Plaintiff was only issued one criminal charge, for resisting arrest. The other charges were violations. *See* Volpe Dep. at pp. 107, 111, 115.

203.     Volpe never tested Ms. Sharpe's windows or handed her a ticket and/or summons for the alleged unlawful tinted windows. (Volpe Dep. 114, 116:10-12).

**Response** – Admit, as it was not necessary to "test" Plaintiff's windows, as her front driver's side and passenger side windows were clearly tinted in a manner that Officer Volpe knew to be illegal in New York. *See* Volpe Dep. at p. 114; *see also* ¶¶ 33, 125-26 in Defendants' Local 56.1

Statement. Plaintiff signed a questionnaire on the night of her arrest, which noted she had been charged with tinted side windows. *See* Pl. Dep. Exhibit M.

204.     Volpe was charging Ms. Sharpe with resisting arrest, tinted windows and harassment. (Volpe Dep. 131:15-22).

**<u>Response</u>** – Deny to the extent that the accusatory instruments charged Plaintiff with resisting arrest, tinted windows and harassment. *See* Volpe Dep. at p. 131.

205.     Volpe never actually saw Ms. Sharpe swing a chain at Officer Gladitz, even though that is what he swore occurred. (Volpe Dep. 121-127).

**<u>Response</u>** – Denied. Officer Volpe inferred that Plaintiff swung a chain at Officer Gladitz because he saw the motion of Plaintiff swinging and Officer Gladitz's reaction, and he realized that the object she was swinging was a chain. *See* Volpe Dep. at pp. 122-23.

206.     Defendants Volpe and Gladitz, as well as Ms. Sharpe was charged with conduct unbecoming of an officer. (Volpe Dep. 159-160).

**<u>Response</u>** – Admit.

207.     Volpe has several civilian complaints against him. (Volpe Dep. 207:15-20).

**<u>Response</u>** – Deny that this is a material issue of fact that would be appropriate for a Rule 56.1 Statement. Notwithstanding its immateriality, over Officer Volpe's 15-year career as a Nassau County Police Officer, there were a few civilian complaints filed against him. *See* Volpe Dep. at p. 207.

208.     One such civilian complaint made by William Harris against Volpe for him being rude and unprofessional. (Volpe Dep. 209-211).

**Response** – Deny that this is a material issue of fact that would be appropriate for a Rule 56.1 Statement. Notwithstanding its immateriality, Mr. Harris made these allegations which were determined to be unfounded. *See* Volpe Dep. at pp. 211-212.

209. Another civilian complaint, made by Katrine Shostak, was in reference to Volpe once again yelling and being unprofessional. (Volpe Dep. 214).

**Response** – Deny that this is a material issue of fact that would be appropriate for a Rule 56.1 Statement. Notwithstanding its immateriality, the cited testimony does not support the assertion, as Officer Volpe was unaware of any such allegation. *See* Volpe Dep. at pp. 213-14.

210. There was another civilian complaint lodged against Volpe by Kamal Morrison for his aggressive and unprofessional conduct towards Morrison. (Volpe Dep. 215).

**Response** – Deny that this is a material issue of fact that would be appropriate for a Rule 56.1 Statement. Notwithstanding its immateriality, the cited testimony does not support the assertion, as Officer Volpe was unaware of any such allegation. *See* Volpe Dep. at pp. 215-16.

211. Volpe asserts that now Commissioner Ryder called Ms. Sharpe "a fucking nigger" and that "he couldn't believe [Volpe] blew the [criminal] case [against Ms. Sharpe]." (Volpe Dep. 226:4-7).

**Response** - Admit.

212. Volpe stated Ryder used the racial slur against Ms. Sharpe after the Ms. Sharpe's criminal trial ended. (Volpe Dep. 230-231).

**Response** – Admit.

213. Volpe did not report the racial slur made by Ryder in fear of retribution and retaliation by Nassau County Police Department. (Volpe Dep. 231-232).

**Response** – Admit.

214. Volpe states that whether Ms. Sharpe showing him her police badge and identification is in factual dispute. (Volpe Dep. 255:13-23).

**<u>Response</u>** – Deny, as the cited testimony only reflects Officer Volpe disputing Plaintiff's counsel's assertion about whether she revealed her identification in front of the store. *See* Volpe Dep. at p. 255.

215. Volpe pursued charges against and testified against Ms. Sharpe for the prosecution during her criminal trial. (Volpe Dep. 261, 268-69).

**<u>Response</u>** – Deny, except admit that Officer Volpe was called by the prosecution to testify. *See* Volpe Dep. at pp. 261-62. At the scene, Officer Volpe suggested that Plaintiff be taken in as a 10-62 (mental health) based on what he perceived as her aggressive, irrational and erratic behavior rather than being charged. *See* Volpe Dep.at pp. 86-87; 260. At the precinct, Officers Volpe and Gladitz indicated they were comfortable with Plaintiff being referred to the Department's Employee Assistance Program rather than being charged. *See* Volpe 3/6/15 Stmt. at ¶ 17. But Fourth Precinct Supervisor Lt. Jeffrey Douglas was instructed by his supervisors to proceed with processing Plaintiff's arrest. *See* Douglas 12/4/13 Stmt. at ¶ 6.

216. Volpe testified against Ms. Sharpe for the prosecution against Ms. Sharpe during her criminal trial. (Volpe Dep. 268-269).

**<u>Response</u>** – Admit that Volpe was called by the prosecution to testify truthfully to what transpired on the night of Plaintiff's arrest. *See* Volpe Dep. at pp. 261-62.

217. Even though Volpe saw Ms. Sharpe's allegedly illegally tinted windows when she got out of her car in the Dollar Tree parking lot, he did not give her a ticket at that time. (*People v. Sharpe* Hearing dated July 10, 2014, pp. 44-45).

**<u>Response</u>** – Admit.

218.    Before Volpe did anything regarding Ms. Sharpe, he had an indication that she was a police officer. (*People v. Sharpe* Hearing dated July 10, 2014, pp. 46).

**Response** – Deny that the cited testimony supports the assertion, as the testimony reflected that she had only stated that she was a police officer. Her behavior led Officer Volpe to question that assertion. *See* Volpe 7/10/14 Hearing Testimony at pp. 46, 51.

219.    Although Volpe was aware that Ms. Sharpe had indicated that she was a police officer, he allowed Ms. Sharpe to get in her vehicle, exit the parking lot in her vehicle, in which he subsequently followed her car and then pulled her over. (*People v. Sharpe* Hearing dated July 10, 2014, pp. 50-1).

**Response** – Admit.

220.    At no point did Volpe ever put in writing that he had the interactions with Ms. Sharpe in the parking lot. (*People v. Sharpe* Hearing dated July 10, 2014, pp. 56).

**Response** – Deny. *See* Volpe 3/6/2015 Statement.

221.    Volpe initiated physical contact with Ms. Sharpe. (*People v. Sharpe* Hearing dated July 10, 2014, pp. 86).

**Response** – Deny, as the cited testimony reflects only that Officer Volpe initiated some "physical action" when he took Plaintiff's ID. *See* Volpe 7/10/14 Hearing Testimony at p. 86.

222.    At the time he pulled Plaintiff over he did not give her any instruction to remain in the car before she emerged from her car. (*People v. Sharpe* Hearing dated July 10, 2014, pp. 79.)

**Response** – Admit. Plaintiff, as a trained police officer, knew that the subject of a traffic stop is supposed to remain in his or her vehicle. *See* Sharpe Dep. at pp. 73-74, 76.

223.    It was not as though Plaintiff was disobeying an instruction for her to stay in her car when she emerged. (*People v. Sharpe* Hearing dated July 10, 2014, pp. 79).

**Response** – Admit, although Plaintiff was defying her own prior training and knowledge by emerging from her vehicle. As an on-duty officer at a traffic stop, Plaintiff herself would have a greater fear for her personal safety if the subject she pulled over immediately exited his or her vehicle and approached the police vehicle. *See* Sharpe Dep. at p. 75.

224.    When Plaintiff emerged from her car she stated, "I already told you I'm a Cop". (*People v. Sharpe* Hearing dated July 10, 2014, pp. 80).

**Response** – Admit that when Plaintiff emerged from the car, she screamed: "Why am I getting pulled over? I already told you I'm a cop." *See* Volpe 7/10/14 Hearing at p. 80; Sharpe Dep. at pp. 264-65.

225.    To Defendant Volpe, her statement was confirming that she had told him that she was a member of the service. (*People v. Sharpe* Hearing dated July 10, 2014, pp. 80).

**Response** – Admit, except Plaintiff's behavior provided reason for Officer Volpe to question her assertion. *See* Volpe 7/10/14 Hearing Testimony at pp. 50-51, 71; Volpe Dep. at pp. 41-43; Gladitz Dep. at pp. 35, 39-40, 49.

**Undisputed Facts Regarding Ms. Sharpe's Credentials**

226.    Ms. Sharpe has an illustrious and resume as a Nassau County Police Officer. (*See* Dolores Sharpe's Resume).

**Response** – Admit as to the facts but deny the characterization of Ms. Sharpe's resume as "illustrious."

227.    During her 20 year career as a Nassau County Police Officer, in addition to patrol, she has worked as an Investigator in the Applicant Investigations Unit, the Recruitment department, Community Affairs, as a School Resource Officer and a Precinct Summons Clerk. (*Id.*).

**Response** – Admit.

228. In addition to those accomplishments, Ms. Sharpe also served as a United States Department of Justice (USDJ) Certified G.R.E.A.T. Instructor, USDJ Certified D.E.F.Y. Mentor, USDJ Certified Weed and Seed Coordinator as well as a patrol officer. (*Id.*).

**Response** – Admit as to Plaintiff's work history but deny that her prior work assignments can be characterized as "accomplishments."

229. Prior to serving 20 years as a Nassau County Police Officer, Ms. Sharpe was a City University of New York (CUNY) Peace Officer Level III Armed Sergeant, served in the United States Air Force for four years and was a United Nations Diplomat Protection Officer. (*Id.*).

**Response** – Admit.

230. Furthermore, Ms. Sharpe's controlled and calm demeanor has allowed her to serve residents of Nassau County in ways including but not limited to: Community Affairs in schools and at senior events and Court Liaison in the District Court. (*Letter to Commissioner Thomas V. Dale*, dated December 2, 2013).

**Response** – Admit that Plaintiff has worked in Community Affairs and as a Court Liaison but deny the characterizations contained herein regarding Ms. Sharpe's demeanor. Moreover, Defendants object to Plaintiff's citation to a self-serving letter written by her attorney to then Commissioner Dale inasmuch as that letter is not admissible evidence and further that reliance upon same raises issues of whether the letter's author is a witness in this case.

231. Ms. Sharpe also worked prestigious details such as the Presidential Debate of 2012 and the Black Course at Bethpage for the Open. (*Id.*).

**Response** - Admit as to Plaintiff's work history but deny that her prior work assignments can be characterized as "prestigious."

**The Undisputed Facts from Plaintiff Sharpe**

232.     After driving into the parking lot on Mayfair Avenue and preparing to park, Ms. Sharpe was stopped by Defendant Volpe who indicated that she should roll her window down. Ms. Sharpe complied. (Sharpe Dep. 36).

**Response** – Deny, except admit that Plaintiff encountered then Officer Volpe's police vehicle while she was driving in the Dollar Tree parking lot and that, when her car was side-by-side with then Officer Volpe, he indicated for Plaintiff to roll down her window so that he could speak with her. *See* Sharpe Dep. at pp. 33-34, 37; Volpe Dep. at pp. 26-27; Volpe 7/10/14 Hearing Testimony at p. 21; Volpe 3/6/15 Statement at ¶ 3.

233.     When Ms. Sharpe complied and rolled her window down, Defendant Volpe indicated that Ms. Sharpe was obstructing his view of his investigation. Ms. Sharpe responded that she was not trying to obstruct the investigation and was only trying to park. (Sharpe Dep. 37:7-11, 22-23).

**Response** – Admit the first sentence of paragraph 233. Admit that Ms. Sharpe indicated she was just trying to park her car in response to Officer Volpe but deny that she said she was not trying to obstruct the investigation. *See* Volpe 3/6/15 Statement at ¶ 3.

234.     After parking her vehicle Ms. Sharpe began to walk toward the store in which she was going to shop. She was near the entrance of the store when "I heard an individual behind me, very roughly. Yo. Yo. Yo, you. And as I turned to see who was saying that and to whom they were addressing it to, I then noticed that was Officer Volpe, the same officer that I had just seen while trying to park, operating 504, indicating for me – with his window fully down – to come over to the RMP." (Sharpe Dep. 38:20-25; 39:2-3).

**Response** – Admit that this was Plaintiff's testimony but deny that Officer Volpe used the phrasing "Yo, Yo, Yo, you." *See* Volpe Dep. at pp. 34-35

235. Defendant Volpe's manner of speaking to Ms. Sharpe was such that he "barked the words out" at Ms. Sharpe. Ms. Sharpe stated in her deposition "If you're going to speak to a person, a human being, another person, you don't yo, yo, you. We're all adults." (Sharpe Dep. 39:8-11).

**Response** – Admit that this was Plaintiff's testimony but deny that Officer Volpe "barked" at Plaintiff. *See* Volpe Dep. at pp. 34-35.

236. Despite Defendant Volpe's tone, Ms. Sharpe walked over to his vehicle. (Sharpe Dep. 40:9-14).

**Response** – Admit the fact that Plaintiff walked over to Officer Volpe's vehicle, but deny the characterizations contained herein.

237. In response to defendant Volpe's comment that Ms. Sharpe "needs to pull over" the next time she sees a police car, Ms. Sharpe displayed her police shield and identification, identified herself as a police officer, and offered to assist officer Volpe with whatever investigation he was involved in. (Sharpe Dep. 40:24-25; 41:2-12; 43:14-25; 44:2-3).

**Response** – Denied. *See* Volpe Dep. at pp. 35-36; Volpe 3/6/15 Statement at ¶ 3; Dollar Tree video footage.

238. Defendant Volpe then told Ms. Sharpe that he does not care who the fuck she was or what the fuck she did. (Sharpe Dep. 41:12-13; 69:18-21).

**Response** – Denied. *See* Volpe Dep. at pp. 35-37.

239. Ms. Sharpe responded that if that is the way he speaks to Members of Service, then fuck you or fuck you too. (Sharpe Dep. 41:14-15; 45:21-25).

**Response** – Admit to the extent that Plaintiff said "fuck you" to Officer Volpe.

240. Defendant Volpe then responded to Ms. Sharpe by saying to her, "that is why you get no respect, you fucking moron." (Sharpe Dep. 41:20-22).

**Response** – Denied. *See* Volpe Dep. at p. 37.

241. Ms. Sharpe did as she was trained to do. "At the point in time when we were in the parking lot, when I showed Officer Volpe my ID and my badge, there would have been an opportunity for him to say do you have your weapon on you or are you are you a police officer. Take my ID, really verify. He did not. So I showed my ID, I did what I was trained to do – show my ID – and I thought that the whole situation was said and done." (Sharpe Dep. 86:15-24).

**Response** – Denied. Contrary to her training, Plaintiff charged towards the police car, cursed and was disrespectful to Officer Volpe during this interaction and walked away from Officer Volpe while he was speaking to her. *See* Volpe Dep. at pp. 35-36, 62; Volpe 3/6/15 Statement at ¶¶ 3-4; Sharpe Dep. at pp. 45, 260, 265-66, 338; Sharpe 4/1/15 Statement at ¶ 6.

242. After completing her shopping and walking back to her car, Ms. Sharpe did not notice any police cars in the parking lot. (Sharpe Dep. 46:25; 47:2-5).

**Response** – Admit.

243. Upon exiting the parking lot and turning onto the adjacent street, Ms. Sharpe observed flashing police lights behind her and immediately pulled over to the right shoulder of Mayfair Avenue. (Sharpe Dep. 48:6-16).

**Response** – Admit.

244. Once Ms. Sharpe pulled over, she realized it was the same police vehicle driven by Defendant Volpe whom she previously identified herself to as a fellow police officer. Ms. Sharpe

then exited her vehicle to learn why the officer was pulling her over. (Sharpe Dep. 49:2-10; 51:16-19).

**Response** – Admit, though, upon exiting her vehicle, Plaintiff approached Officer Volpe's vehicle, which is implicit in but not explicitly stated in Plaintiff's statement of fact. *See* Sharpe Dep. at p. 49; Volpe Dep. at p. 61. In actuality, Plaintiff ran toward Officer Volpe's vehicle, screaming and cursing. *See* Sharpe Dep. at pp. 265-66; Volpe Dep. at p. 62.

245. Before Ms. Sharpe reached the rear wheel of her vehicle, she was forcefully grabbed by Defendant Gladitz by the forearms and pushed back against her own vehicle. (Sharpe Dep. 49:11-16, 20-25; 50:2-6; 53:2-6).

**Response** – Admit that, before Plaintiff reached Officer Volpe's vehicle, she was intercepted by Officer Gladitz but deny the characterizations contained therein. *See* Sharpe Dep. at pp. 49-50; Gladitz Dep. at pp. 47-48; Volpe Dep. at p. 63.

246. At that time Defendant Volpe was also standing outside of his vehicle. (Sharpe Dep. 51:8-12).

**Response** – Denied. *See* Sharpe Dep. at p. 49; Gladitz Dep. at pp. 43, 45, 47; Volpe Dep. at pp. 61-64.

247. As Defendant Gladitz begins pinning Ms. Sharpe against her vehicle, Ms. Sharpe asks Defendant Volpe "why are you doing this to me, I just identified who I am, and I am a 6 member of service." (Sharpe Dep. 52:2-6; 68:9-15).

**Response** – Admit that Plaintiff eventually identified herself to Officer Gladitz as a "cop." *See* Sharpe Dep. at p. 52; Gladitz Dep. at p. 48.

248. Defendant Gladitz replied to Ms. Sharpe's question by pushing her against the car and stating "I don't know who you are." (Sharpe Dep. 52:6-8).

**Response** Admit that Officer Gladitz responded that he did not know who Plaintiff was but deny the balance of the allegations. *See* Sharpe Dep. at pp. 52, 325; Gladitz Dep. at p. 48; Gladitz 3/7/15 Statement at ¶ 3.

249.    While being restrained by Defendants Gladitz, Ms. Sharpe continued to inform Defendants Volpe and Gladitz of her identity. "I kept explaining to both of the officers that I am a member of service, at which point there was an exchange with Officer Volpe that he didn't believe that I was an officer. He didn't know that I was an officer." (Sharpe Dep. 53:16-20).

**Response** – Admit that Plaintiff and the Officers had a conversation about Plaintiff's status as an off duty police officer but deny that she was restrained at this time. *See* Sharpe Dep. at p. 53; Volpe Dep. at p. 65; Gladitz 3/7/15 Statement at ¶ 5.

250.    "There was an exchange between myself and Officer Volpe. I'm still attesting to the fact that I am a member of service. I showed him my ID previously. I explained that to Officer Gladitz, and at some point in time within that exchange, Officer Volpe asked for my – my credentials." (Sharpe Dep. 54:6-12).

**Response** – Admit that there was an exchange but deny that Plaintiff either showed Officer Volpe her police identification previously or stated that she had shown it to him. *See* Volpe Dep. at pp. 32, 35, 50, 66, 68.

251.    Ms. Sharpe explained to defendants Volpe and Gladitz that her badge was in her right front pocket of her coat and she would need to remove the identification in order to show it to defendants. (Sharpe Dep. 54:18-21).

**Response** – Admit.

252.    Defendant Gladitz, with his hands on top of Ms. Sharpe's hands, allowed Ms. Sharpe to reach into her coat and retrieve her badge. (Sharpe Dep. 55:7-8).

**Response** – Deny. Officer Gladitz did not place his hands on Plaintiff's forearms until after she had already retrieved the identification from her pocket. *See* Gladitz Dep. at pp. 65-66; Gladitz 3/7/15 Statement at ¶ 6.

253.     When Ms. Sharpe holds her identification up for defendants to see, while Defendant Gladitz is still holding Ms. Sharpe by the forearms, Defendant Volpe reached over defendant Gladitz' left shoulder and grabbed the badge and identification from Ms. Sharpe's hand. (Sharpe Dep. 55:21-24; 56:14-18, 25; 57:2-3).

**Response** – Deny. As indicated in response to paragraph 252 above, Officer Gladitz did not place his hands on Plaintiff's forearms until after she had already retrieved the identification from her pocket. *See* Gladitz Dep. at pp. 65-66; Gladitz 3/7/15 Statement at ¶ 6. In addition, Officer Volpe did not reach over the substantially taller Officer Gladitz and grab the identification. Officer Volpe did, however, take Plaintiff's identification and badge. *See* Sharpe Dep. at pp. 55-56; Volpe Dep. at pp. 68-70; Gladitz Dep. at p. 57.

254.     Once Defendant Volpe grabbed Ms. Sharpe's badge, he snatched the badge with such force that he broke the portion holding the badge from the chain to which it was attached. (Sharpe Dep. 58:6-7, 21-23).

**Response** –Admit that, when Officer Volpe took the identification, it broke away from the chain to which it was attached, but deny he used the force that caused it to separate and deny that the chain "broke.". *See* Sharpe Dep. at pp. 58, 61-62; Gladitz Dep. at p. 57; Volpe Dep. at pp. 70-71.

255.     Ms. Sharpe replaced the thin chain that came with the identification holder with a stronger sturdier chain. "It was a – it was a herringbone chain, silver – sterling silver chain that I got specifically for that holder." (Sharpe Dep. 59:9-11; 61:14-20).

**Response** – Admit.

256. After Defendant Volpe snatched Ms. Sharpe's identification and returns to his patrol car, he indicates to Defendant Gladitz that he should find out what else Ms. Sharpe has. (Sharpe Dep. 62:17-19).

**Response** – Deny. *See* Gladitz Dep. at pp. 61-62.

257. At that point, Defendant Gladitz, still with his hands forcefully on Ms. Sharpe's forearms forcibly removes her hands from her pocket. (Sharpe Dep. 62:21-25).

**Response** – Deny. Plaintiff removed her hands from her pockets without Officer Gladitz's assistance, although his hands were on her forearms at the time. *See* Sharped Dep. at p. 62; Gladitz Dep. at pp. 65-66; Gladitz 3/7/15 Statement at ¶ 6.

258. When Defendant Volpe snatched Ms. Sharpe's badge and separated the badge from her chain, the chain remained in Ms. Sharpe's possession. Ms. Sharpe kept the chain in her pocket, mostly wrapped around her hand, until Defendant Gladitz removed her hand from her pocket. (Sharpe Dep. p. 63; 64:2-5).

**Response** – Admit that Plaintiff retained the broken chain in her hand after it had become separated from her identification but deny the balance of the allegations set forth herein. *See* Sharpe Dep. at pp. 62-66.

259. Once Defendant Gladitz removed Ms. Sharpe's hand from her pocket, Defendant Gladitz again cursed at Ms. Sharpe and exclaimed that Ms. Sharpe tried to hit him. "He calls me a bitch and says that I attempted to hit him with my chain." (Sharpe Dep. 64:7-9).

**Response** – Admit that Officer Gladitz stated that Plaintiff had tried to strike him with the chain and called her a "bitch," but deny the balance of the allegations and characterizations set forth herein. *See* Sharpe Dep. at pp. 77-78; Gladitz Dep. at pp. 77, 80; Volpe Dep. at p. 88; Partial recording.

260.     Ms. Sharpe receiving training in the police academy as well as following the police academy in police encounters between on and off duty police officers. (Sharpe Dep. 70:3-12).

**Response** – Admit.

261.     As part of that training, Ms. Sharpe learned to immediately identify herself as a police officer when off-duty and to show her identification to support the fact that she was a police officer. (Sharpe Dep. 70:13-21).

**Response** – Admit.

262.     When asked whether she was ever told about accepting the word of an individual that they were a police officer, Ms. Sharpe responded with the following, indicating that she and Defendants Volpe and Gladitz received the same training. Sharpe Dep. Page 71

> Q: Sure. Were you told at any point that if you are the on-duty
>
> officer, that you are not to simply accept the word of someone that
>
> they are, in fact, also a police officer or a member of service?
>
> A: It actually would – would really vary as to what the
>
> circumstance is. If – if there is a situation that there was a crime
>
> that had happened and someone is telling me that they are a police
>
> officer, I would pretty much want to have clear identification.
>
> However, in this instance, this was a very different circumstance. I
>
> had done nothing wrong. I was a shopper for Black Friday going to
>
> a store, and I was harassed and followed by an officer who – for
>
> whatever reason – felt necessary to come after me after I had
>
> already identified myself to him as a police officer. He had an
>
> opportunity at the time when I did show him to inquire further. He

chose to curse at me and call me a fucking moron. So – so the

same training that I had, those officer also had. And their training,

obviously they didn't adhere to – to the – to anything.

(Sharpe Dep. 71:4-8, 11-25; 72:2-6).

**<u>Response</u>** – Admit that this was Plaintiff's testimony, but deny that this testimony is consistent

with the training she received or that she knew what training Officers Gladitz and Volpe had

received. *See* Nassau County Police Department Off-Duty and Plain Clothes Encounters Course

materials; Nassau County Police Academy training materials.

263.    Once Sergeant Boyce, arrived at the scene, Ms. Sharpe's handcuffs were immediately

removed. (Sharpe Dep. 90:19-23).

**<u>Response</u>** – Deny that the handcuffs were "immediately" removed, after Sergeant Boyce arrived

on scene, but admit they were removed only after Sergeant Boyce spoke with Plaintiff, Officer

Volpe and Officer Gladitz. *See* Sharpe Dep. at p. 90.

Dated:  Melville, New York
          June 24, 2022

                                                  Yours, etc.
                                                  LAMB & BARNOSKY, LLP

                        By:        /s/ Matthew J. Mehnert
                                     Richard K. Zuckerman
                                     Matthew J. Mehnert
                                     Attorneys for Defendants County of Nassau, Nassau
                                     County Police Department and Thomas Dale
                                     534 Broadhollow Road, Ste. 210
                                     P.O. Box 9034
                                     Melville, New York 11747-9034
                                     (631) 414-5808

                                     SOKOLOFF STERN, LLP
                                     Steven Stern, Esq.

Attorneys for Defendant Charles Volpe
179 Westbury Avenue, 2nd Floor
Carle Place, New York 11514
(516) 334-4500

MONTFORT, HEALY, MCGUIRE & SALLEY, LLP
James Murphy, Esq.
Attorneys for Defendant Victor Gladitz
840 Franklin Avenue
P.O. Box 7677
Garden City, New York 11530
(516) 747-4082